183 P.3d 334 (2008)
Cristi VEITH, individually and as the personal representative of the Estate of Michael D. Veith, Appellant,
v.
XTERRA WETSUITS, L.L.C., a California limited liability company; King Distribution, LLC, d/b/a Xterra Wetsuits U.S.A., a Virginia LLC, Defendants,
UnclePDog, LLC, d/b/a Xterra Wetsuits International, a Virginia LLC, Respondent.
No. 25912-9-III.
Court of Appeals of Washington, Division 3.
May 1, 2008.
Michael A. Maurer, Attorney at Law, Spokane, WA, for Appellant.
Ronald Gordon Morrison, Morrison & Associates PC, Spokane, WA, for Respondent.
THOMPSON, J.[*]
¶ 1 This appeal arises from a superior court decision denying a motion to enforce a settlement agreement. Parties enter into an enforceable settlement agreement when their intentions are plain and they agree upon the contract's terms even if one or both of the parties contemplated later execution of a written agreement. Moreover, valid contracts require acceptance. Here, some material terms had not yet been resolved and the defendant had not approved a final settlement. The parties therefore did not have an enforceable settlement agreement. We affirm the trial court.

*336 FACTS
¶ 2 Michael Veith died of hyperthermia during the swimming leg of a triathlon. At the time of his death, he was wearing a wetsuit manufactured by Xterra Wetsuits, LLC (Xterra) and distributed by UnclePDog, LLC (UnclePDog) and King Distribution, LLC (King). His widow, Cristi Veith, sued Xterra, UnclePDog, and King. She alleged that the wetsuit was defective and that the defendants failed to warn of the possibility that the suit could cause a person to become hyperthermic.
¶ 3 UnclePDog was uninsured when Ms. Veith sued. UnclePDog had a distribution agreement with King wherein King would name UnclePDog as an additional insured under its liability insurance policy. King procured liability insurance in the amount of $1,000,000 through Montgomery Insurance Company (Montgomery). It intended to name UnclePDog. But UnclePDog was not listed as an additional insured under King's policy. Montgomery refused UnclePDog's tender of defense of this suit as a result.
¶ 4 UnclePDog and Ms. Veith then entered into settlement negotiations. The parties conferred and exchanged correspondence and draft agreements. UnclePDog agreed to assign its potential claims against Montgomery to Ms. Veith. It also promised to stipulate to a $1,000,000 judgment against it. Ms. Veith agreed to release all her claims against UnclePDog in exchange. She also agreed not to execute on the stipulated judgment.
¶ 5 Ms. Veith, UnclePDog, King, and Montgomery participated in a mediation meeting. Ms. Veith and her attorney believed that they had reached a final agreement with UnclePDog before the meeting began because of UnclePDog's counsel's statement that they had a deal.
¶ 6 Montgomery agreed, during the course of the mediation meeting, to insure UnclePDog. UnclePDog's counsel then told Ms. Veith's attorney that UnclePDog was no longer interested in negotiating a settlement.
¶ 7 Ms. Veith moved to enforce what she viewed to be a final settlement agreement. After the parties presented evidence and testimony at a hearing, the court concluded that "[t]he attempted compromise did not pass from a stage of negotiation to one of finality." Clerk's Papers (CP) at 69. It found that Ms. Veith and UnclePDog had "a basic agreement as to the outlines of an agreement." Id. It also found that "the matter wasn't completely resolved [because] various items raised by UnclePDog . . . had not been resolved and were clearly material." Id. Finally, the court found that "Mr. Simmons, the owner of UnclePDog, LLC had not given final approval to the settlement because it was not in the final form and was not presented to him as such." Id.

DISCUSSION
¶ 8 Motions to enforce judgment are reviewed de novo where the evidence consists of only declarations and affidavits. Lavigne v. Green, 106 Wash.App. 12, 16, 23 P.3d 515 (2001). But cf. Morris v. Maks, 69 Wash.App. 865, 868, 850 P.2d 1357 (1993) (applying abuse of discretion standard of review). But where the trial court decides a motion to enforce after taking evidence and testimony at a hearing, as the court did here, we review the trial court's factual findings for substantial evidence. Fred Hutchinson Cancer Research Ctr. v. Holman, 107 Wash.2d 693, 712, 732 P.2d 974 (1987).
¶ 9 The trial court here issued a memorandum opinion. It did not enter formal findings of fact and conclusions of law. Memorandum opinions that adequately cover the court's determination of facts shown by the evidence are sufficient to fulfill the requirement for findings of fact. Bice v. Bice, 138 Wash. 598, 601, 244 P. 1000 (1926); see State v. Clark, 46 Wash.App. 856, 859, 732 P.2d 1029 (1987). We conclude that the memorandum opinion here sufficiently covers the court's factual findings, satisfying the requirement for findings of fact.
¶ 10 Ms. Veith does not assign error to any of the trial court's findings. Unchallenged findings are verities for purposes of appeal. Zunino v. Rajewski, 140 Wash. App. 215, 220, 165 P.3d 57 (2007). This court then must determine whether those findings from the memorandum opinion support the *337 court's conclusions of law. Id. Conclusions of law are reviewed de novo. Id.
¶ 11 The issue before the trial court was whether Ms. Veith and UnclePDog had entered into an agreement to settle the litigation between them. The court concluded that "[t]he attempted compromise [between Ms. Veith and UnclePDog] did not pass from a stage of negotiation to one of finality." CP at 69. In other words, the court determined that Ms. Veith and UnclePDog did not enter into a settlement agreement.
¶ 12 Ms. Veith contends that she and UnclePDog had an enforceable settlement agreement even though the parties did not sign the final agreement. She argues that the agreement contained all the material terms and that UnclePDog did not genuinely dispute those terms. Ms. Veith contends that UnclePDog's attorney orally accepted the final terms of the agreement.
¶ 13 The validity and enforceability of a settlement agreement is determined by reference to the substantive law of contracts. Stottlemyre v. Reed, 35 Wash.App. 169, 171, 665 P.2d 1383 (1983). A contract exists when the intention of the parties is plain and the terms of a contract are agreed upon even if one or both of the parties contemplated later execution of a writing. Id. A contract requires offer, acceptance, and consideration. Christiano v. Spokane County Health Dist., 93 Wash.App. 90, 95, 969 P.2d 1078 (1998). "There is no valid contract until an offer is accepted." Hansen v. Transworld Wireless TV-Spokane, Inc., 111 Wash.App. 361, 370, 44 P.3d 929 (2002). Acceptance is an expression (communicated by word, sign, or writing to the person making the offer) of the intention to be bound by the offer's terms. Plouse v. Bud Clary of Yakima, Inc., 128 Wash.App. 644, 648, 116 P.3d 1039 (2005).
¶ 14 The court's unchallenged findings show that the parties had not yet resolved their disagreements over some of the settlement's material terms. The findings also show that UnclePDog had not approved the final settlement. In other words, the agreement lacked valid acceptance, and the parties had not yet agreed upon all of its material terms. These findings support the conclusion that a contract did not exist between Ms. Veith and UnclePDog.
¶ 15 Regardless of which standard we apply, the abuse of discretion as here or de novo (as the dissent suggests), our result would be the same. Ms. Veith had a duty at the trial court level to produce evidence that established the existence of a contract. She failed to satisfy that duty.
¶ 16 Affirmed.
I CONCUR: KULIK, A.C.J.
SWEENEY, J. (dissenting).
¶ 17 I am unable to conclude one way or the other on this record whether these parties reached a settlement agreement and I, therefore, respectfully dissent.
PROCEDURAL POSTURE
¶ 18 First, the matter came before the trial court on what the plaintiff styled as "Plaintiff's Motion to Enforce Settlement Agreement." Clerk's Papers (CP) at 7. The motion was supported by affidavits and live testimony from both the lawyers and the parties involved. But as I read this record, the parties asked for a ruling as a matter of law and the court ruled, as a matter of law, that there was no contract. The court entered no findings of fact or conclusions of law. There is only a "Memorandum Decision," CP at 67-69, and an "Order Denying Plaintiff's Motion to Enforce Settlement Agreement." CP at 70.
¶ 19 For me then, the posture of the case is the same as the posture of the case in Brinkerhoff v. Campbell, even though there the court specifically noted that the evidence consisted "entirely of affidavits and the proceeding [was] similar to a summary judgment proceeding." Brinkerhoff v. Campbell, 99 Wash.App. 692, 696, 994 P.2d 911 (2000). Whether there is live testimony or not, when the court decides a question as a matter of law (here, was there a contract) then it seems to me that our review should be de novo. Lavigne v. Green, 106 Wash.App. 12, 16, 23 P.3d 515 (2001).
*338 ¶ 20 UnclePDog, LLC urges that the standard of review here is abuse of discretion. Resp't's Br. at 10. And, indeed, that idea finds support in Patterson.[1] Of course, the standard of review is substantial evidence if we are asked to review findings of fact. Brewer v. Fibreboard Corp., 127 Wash.2d 512, 525, 901 P.2d 297 (1995). But there are no findings of fact in this record. And, therefore, there is nothing for Cristi Veith to assign error to or for us to review for substantial evidence.
¶ 21 The standard of review would be de novo if the questions raised are questions of law  again, here whether there was or was not a contract. Lavigne, 106 Wash.App. at 16, 23 P.3d 515; Brinkerhoff, 99 Wash.App. at 696, 994 P.2d 911. I would review the court's ruling de novo.
COURT'S MEMORANDUM DECISION
¶ 22 Here is what the trial judge wrote in his memorandum decision:
In 2005 UnclePDog retained Michael Blue to represent its interests. Mr. [Michael] Maurer and Mr. Blue exchanged settlement proposals and possible agreements prior to February 8, 2006. Essentially, the two parties appeared to have agreed to a concept of a stipulated judgment with a covenant not to execute, together with an assignment from UnclePDog of its rights against its own insurance carrier. The details of the settlement were complex and involved questions of filing of the judgment, impact on the credit of UnclePDog's, confidential[ity], and the preparation of a satisfaction of judgment. It was apparent that the Plaintiff was interested in getting a settlement that would allow the Plaintiff to attack the insurance carrier for bad faith. UnclePDog was interested in protecting its business enterprise. Accordingly, the parties['] approach to the settlement was quite different from each other.
The Court finds that the two parties involved did have a basic agreement as to the outlines of an agreement. The Court also finds the matter wasn't completely resolved. Although Plaintiff's counsel asserts he would have agreed to various items raised by UnclePDog, nonetheless, these terms had not been resolved and were clearly material.
There are some concerns raised by the manner in which Mr. Blue [the lawyer for UnclePDog] handled communications with Mr. Maurer [the lawyer for plaintiff]. He was not as clear as he could have been with what was agreed to, what was not, and what still might need to be reviewed by UnclePDog's business lawyers. His acts could lead to suspicion that decisions were being based on obtaining coverage rather than resolving the case. Still, there is no evidence to suggest he did not act in good faith.
CP at 69.
CONTRACT FORMATION
¶ 23 We have already held that "[i]f the intention of the parties is plain and the terms of a contract are agreed upon, then a contract exists, even though one or both of the parties may have contemplated later execution of a writing." Stottlemyre v. Reed, 35 Wash.App. 169, 171, 665 P.2d 1383 (1983).
¶ 24 But the next question here is the more difficult one. UnclePDog argues that the lawyer representing it in Washington, Mr. Blue, did not have authority to enter into any settlement agreement. And any agreement was therefore contingent on the approval of its owner and its Virginia counsel. Again, there are no findings of fact here on whether that was, first of all, an essential element of the agreement or, if it was, whether the parties agreed to the contingency. The second stumbling block to formation of an enforceable agreement urged by UnclePDog is the failure to agree on whether and how the judgment would be filed for record. UnclePDog argues that confidentiality was an essential element of any agreement and the failure to resolve that shows there was no meeting of the minds.
¶ 25 Ms. Veith maintains that the essential elements of this contract were UnclePDog's confession of judgment, UnclePDog's assignment of any insurance bad faith claim against *339 its insurer, Montgomery Insurance Company, and her agreement not to execute on the judgment. And Ms. Veith maintains that all of that was agreed to. Moreover, Ms. Veith showed that even if filing of the judgment and confidentiality were essential elements of any agreement, Ms. Veith had agreed on the terms suggested by UnclePDog's lawyer, Mr. Blue.
¶ 26 A lawyer has the power to bind his client to a settlement. Stottlemyre, 35 Wash. App. at 172, 665 P.2d 1383. That lawyer here was Mr. Blue. And Ms. Veith is correct that the essential agreement here had been reached  a stipulated judgment, a covenant not to execute, and assignment of UnclePDog's claims (whatever they might be) against Montgomery Insurance. The record does not show whether UnclePDog's allegedly unresolved, material terms were actually essential (and why) or actually agreed to by Ms. Veith's attorney (and when). It is certainly not developed sufficiently for me to conclude that there was, or was not, a contract of settlement here. Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wash.2d 572, 586 n. 24, 790 P.2d 124 (1990) ("Ordinarily, the existence of mutual assent is a question of fact."); Pietz v. Indermuehle, 89 Wash.App. 503, 519, 949 P.2d 449 (1998)("If the parties' intention is clear and they have agreed upon the terms of a contract, then a contract exists, even though one or both of the parties may have contemplated formalizing it through the execution of a written document.").
¶ 27 Those contentions suggest for me questions of fact, particularly in light of the line of cases beginning with Berg v. Hudesman[2] ("extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent").
¶ 28 I would then reverse and remand for trial on the question of whether a contract was formed and, if so, what the terms were.
NOTES
[*] Judge Philip J. Thompson is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.
[1] In re Matter of Patterson, 93 Wash.App. 579, 585-86, 969 P.2d 1106 (1999).
[2] Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990).