# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MANUEL CRUZ, GILBERTO RAMIREZ, ) 
and EPIFANIO RIOS, )

No. 70741-8-I

Respondents,

DIVISION ONE

v.

PUBLISHED OPINION

ABEL CHAVEZ and JANE DOE 
CHAVEZ, and the marital community 
thereof; and CHAVEZ LANDSCAPING, 
LLC, a limited liability company;

Appellants,

and

AMERICAN CONTRACTORS 
INDEMNITY COMPANY, bond 
Numbers 100089494 and 100023375,

FILED: April 13, 2015

Defendant.

TRICKEY, J. — Civil Rule 2A precludes enforcement of a settlement agreement where there is a genuine dispute of material fact regarding the existence of the agreement. Under principles of contract law, which govern settlement agreements, mutual assent is an essential element for the formation, or existence, of a valid agreement. Here, the plaintiffs demonstrated a question of material fact as to the validity of plaintiff Gilberto Ramirez's assent by presenting evidence that the defendant and his attorney induced Ramirez's assent through deceptive, coercive, or otherwise wrongful tactics. In so doing, the plaintiffs established a material dispute over the existence of the settlement agreement. Accordingly, we affirm the trial court's decision denying enforcement of the alleged settlement agreement.

FACTS

On June 9, 2011, Manuel Cruz, Ramirez, and Epifanio Rios (collectively, plaintiffs) filed a lawsuit against their former employer, Abel Chavez and Chavez Landscaping LLC (collectively, Chavez), alleging that Chavez withheld and underpaid wages owed to them.[1]  According to the plaintiffs' trial memoranda, the plaintiffs worked as landscape employees for Chavez.  The plaintiffs, who came from Mexico and speak no English, claimed that Chavez took advantage of them throughout their employment.

At all relevant times throughout the litigation, attorney John Frawley represented the plaintiffs and attorney Michael Jacobson represented Chavez.

The case proceeded through arbitration.  In April 2012, the trial court entered an arbitration award in favor of the plaintiffs.  According to the plaintiffs' trial memoranda, thereafter, Chavez requested a trial de novo.

In July 2012, Jacobson contacted Rios's former place of employment and falsely represented to Tim McLaughlin, the company's president, that he represented Rios. Jacobson later served McLaughlin at least two subpoenas in which Jacobson signed his name as the "ATTORNEY FOR PLAINTIFF."[2]  Through these subpoenas, Jacobson sought confidential records regarding Rios's employment.  Jacobson provided no notice to the plaintiffs or to Frawley about his contact with McLaughlin or his requests for discovery.  The plaintiffs and Frawley learned of Jacobson's discovery requests in January 2013.

---

[1] Defendant American Contractors Indemnity Company was dismissed by stipulated order dated April 9, 2012.
[2] Clerk's Papers (CP) at 142-43, 146.

On September 4, 2012, Chavez and Ramirez executed a settlement and release agreement (Ramirez agreement), in which Ramirez agreed not to sue Chavez in exchange for a monetary settlement of $4,000. The agreement was written in Spanish and appears to have been signed by Ramirez, Chavez, and a witness. Attorneys Frawley and Jacobson were not present during this meeting.

According to Chavez, Chavez notified Jacobson of the Ramirez agreement shortly after its execution. However, neither Jacobson nor Ramirez informed the other plaintiffs, Frawley, or the trial court of the Ramirez agreement. In fact, Ramirez terminated communication with Frawley after signing the agreement. He also stopped contacting the other plaintiffs and refused to discuss the matter with them. The record indicates that Ramirez's sudden lack of communication following the agreement's execution may have been attributed to a statement made by Chavez to Ramirez. Chavez told Ramirez that, according to Jacobson, Ramirez would not need Frawley's assistance if they settled and should no longer contact Frawley.

By February 2013, Cruz and Rios settled their claims with Chavez in mediation. Between September 4, 2012, and the trial date on February 11, 2013, Chavez communicated with Frawley, the trial court, and the mediator on several occasions. Not until five days before trial on February 11 did Jacobson reveal to Frawley that Ramirez had signed a settlement agreement with Chavez. On February 11, 2013, the court struck the trial date.

On June 11, 2013, Chavez filed a motion, apparently for the second time,[3] to enforce the Ramirez agreement. Chavez submitted to the trial court a copy of the signed

---

[3] An excerpt from the February 11 hearing shows that on February 8, 2013, Jacobson filed a motion to enforce the Ramirez agreement. Upon learning of the four month delay in

agreement in Spanish and a copy of the agreement translated into English. Chavez also presented a copy of the settlement check for $4,000, which designated Chavez Landscaping LLC as the payor and Gilberto Ramirez as the payee. The check was issued on September 4, 2012, and posted on that same date. The backside of the check shows Gilberto Ramirez's signature endorsing the check.

In Chavez's declaration submitted with the motion to enforce, Chavez stated that in a previous lawsuit unrelated to the present one, he had been involved in a dispute with an employee named Gil Ortiz. In 2011, Jacobson had drafted an agreement to settle that case. In the present lawsuit, Chavez alleged that he saw Ramirez at a community gathering. According to his declaration, Chavez told Ramirez he would pay Ramirez the amount he wished, and they agreed to meet again the next day. Chavez later asked his office manager to translate the 2011 Gil Ortiz agreement into Spanish and change the name from Gil Ortiz to Gil Ramirez. The next day, Chavez stated, Ramirez read the agreement and signed it. Thereafter, when Chavez told Jacobson he had settled with Ramirez, Jacobson told Chavez that "there were some legal things to handle."[4]

In response, the plaintiffs sought an order denying enforcement of the Ramirez agreement, contending the agreement violated both the Rules of Professional Conduct (RPC) and the Civil Rules (CR). The plaintiffs additionally sought sanctions against Chavez and Jacobson for violations of the RPC, CR 11, and the discovery rules. The plaintiffs submitted declarations from Rios, Cruz, McLaughlin, and Frawley.

---

communicating the existence of the settlement agreement, the trial court decided to not "deal with the substance of the agreement" that day and, according to the plaintiffs, denied Chavez's motion to enforce the agreement. CP at 159. Chavez does not seek review of this ruling on appeal, and the parties have not provided a developed record on that motion.

[4] CP at 189.

The trial court denied enforcement of the Ramirez agreement, finding that the manner in which it was obtained was inappropriate. The court imposed sanctions in the amount of $5,000 against Chavez and Jacobson for Jacobson's discovery violations and for their failure to disclose the Ramirez agreement.

Chavez appeals.

## ANALYSIS

### Ramirez Agreement

Chavez contends that the trial court erred by declining to enforce the Ramirez agreement. He asserts that CR 2A does not bar enforcement of the agreement because there is no genuine dispute over its material terms or existence. We disagree. Through their submission of evidence demonstrating that Ramirez's assent was induced by Chavez's and Jacobson's wrongful acts, the plaintiffs presented a material question of fact as to the validity of Ramirez's assent. Accordingly, we find that there remains a genuine dispute over the existence, or formation, of the Ramirez agreement.

CR 2A provides:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

CR 2A applies to preclude enforcement of an agreement when "(1) the agreement was made by the parties or attorneys 'in respect to the proceedings in a cause[,]' and (2) the purport of the agreement is disputed." In re Patterson, 93 Wn. App. 579, 582, 969 P.2d 1106 (1999) (alteration in original) (quoting In re Marriage of Ferree, 71 Wn. App. 35, 39, 856 P.2d 706 (1993)).

5

The purport of an agreement is disputed within the meaning of CR 2A if there is a genuine dispute over the existence or material terms of the agreement. Patterson, 93 Wn. App. at 583. The party moving to enforce a settlement agreement carries the burden of proving there is no genuine dispute as to the material terms or existence of the agreement. Brinkerhoff v. Campbell, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). If the moving party meets its burden, "the nonmoving party must respond with affidavits, declarations, or other evidence to show there is a genuine issue of material fact." Patterson, 93 Wn. App. at 584.

We review a decision regarding the enforcement of a settlement agreement de novo. Lavigne v. Green, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). "The trial court follows summary judgment procedures when a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed." Condon v. Condon, 177 Wn.2d 150, 161-62, 298 P.3d 86 (2013). The trial court must view the evidence in the light most favorable to the nonmoving party and "determine whether reasonable minds could reach but one conclusion." Ferree, 71 Wn. App. at 44. "[I]f the nonmoving party raises a genuine issue of material fact, a trial court abuses its discretion if it enforces the agreement without first holding an evidentiary hearing to resolve the disputed issues of fact." Brinkerhoff, 99 Wn. App. at 697.

We apply general principles of contract law to settlement agreements. Lavigne, 106 Wn. App. at 20. An essential element to the valid formation of a contract is the parties' objective manifestation of mutual assent. Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004). "'The whole panoply of contract law rests on the principle that one is bound by the contract which he voluntarily and knowingly signs.'" H.

D. Fowler Co. v. Warren, 17 Wn. App. 178, 180, 562 P.2d 646 (1977) (quoting National Bank v. Equity Investors, 81 Wn.2d 886, 912-13, 506 P.2d 20 (1973)). Thus, where a party has signed a contract, he or she is presumed to have objectively manifested assent to its contents. See Skagit State Bank v. Rasmussen, 109 Wn.2d 377, 381-84, 745 P.2d 37 (1987); Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 897, 28 P.3d 823 (2001). However, that rule will not apply where another contracting party committed fraud, deceit, misrepresentation, coercion, or other wrongful acts. See Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 389, 858 P.2d 245 (1993) (citing Skagit State Bank, 109 Wn.2d at 381-84); Tjart, 107 Wn. App. at 897.

Here, the plaintiffs submitted evidence that, when viewed in the light most favorable to the plaintiffs, tends to establish that Chavez and Jacobson committed such wrongful acts. In Cruz's declaration, Cruz stated that Chavez had contacted him directly, encouraging him to settle his claims without the assistance of counsel. Chavez proposed that in exchange for a money settlement, Cruz would sign a document "that would come from his attorney," which would end their dispute.[5]

According to Cruz's declaration, Chavez told Cruz that Jacobson said if they settled, Cruz would no longer need to contact his attorney, and that, in fact, Cruz *should* not contact his attorney. Alarmed by this contact, Cruz notified Frawley, who, in turn, notified Jacobson that this contact was inappropriate. However, as Cruz stated, Chavez approached Ramirez with the same proposal he had made to Cruz. Ramirez informed Cruz that Chavez approached Ramirez outside of Frawley's presence and communicated to Ramirez the same instructions that he had given Cruz: that, according to Jacobson, if

---

[5] CP at 260.

7

they settled, there would be no need for Ramirez to contact his attorney. After Ramirez signed the settlement, he ceased contact with the remaining plaintiffs and Frawley.

Through the advice of Jacobson, Chavez urged Ramirez to sign a contract without the assistance of counsel, and, in what may have appeared as benign advice, falsely informed him that Frawley's involvement was no longer needed. Viewing Cruz's declaration in the light most favorable to the plaintiffs, we hold that the plaintiffs demonstrated the presence of a genuine issue of material fact as to whether Chavez committed deceptive, coercive, or otherwise wrongful acts in inducing Ramirez's assent to be bound by the agreement.

Indeed, the evidence shows that Jacobson's acts may have been contrary to RPC 4.2.[6] RPC 4.2 forbids an attorney from communicating directly with a represented party. The purpose of the rule "is to prevent situations in which a represented party is taken advantage of by adverse counsel." In re Disciplinary Proceeding Against Carmick, 146 Wn.2d 582, 597, 48 P.3d 311 (2002). Comment 4 to RPC 4.2 states, in pertinent part, that "[a] lawyer may not make a communication prohibited by this Rule through the acts of another." The evidence shows that Jacobson may have made prohibited communication by providing Chavez the release paperwork and instructing Chavez to contact Ramirez directly in an effort to obtain a settlement without the involvement of Ramirez's counsel.

---

[6] RPC 4.2 provides:
> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Because there remains a material question of fact as to the validity of Ramirez's assent, the plaintiffs have proved that the existence of the Ramirez agreement is genuinely disputed. We hold that the trial court did not err in declining to enforce the agreement.[7]

Attorney Sanctions

Chavez appeals the trial court's imposition of sanctions against Jacobson and Chavez for their discovery violations committed in obtaining Rios's employment records. The trial court awarded sanctions against Chavez and Jacobson to compensate Frawley for reasonable costs incurred in investigating the discovery violations and bringing the matters before the trial court. Chavez makes no contention that the trial court abused its discretion or that the sanctions were excessive. Instead, it appears that he argues that the trial court erred by imposing sanctions because a settlement agreement between Rios and Chavez purportedly relieved Chavez of this responsibility.[8]

According to a settlement agreement with Rios, Rios agreed to execute a "[g]eneral [r]elease of all claims in existence on this day this agreement is executed, including claims for prevailing party counsel fees and for the benefit of all defendants."[9] Chavez argues that this language released Chavez and Jacobson from liability for the

---

[7] Chavez additionally contends that he was deprived of "a full CR 56(c) 28-day notice" when the trial court ruled on the enforceability of the settlement agreement only after a five-day hearing notice. Br. of Appellant at 29. But Chavez scheduled the hearing to take place within two weeks of filing his motion. On June 11, 2013, Chavez filed the motion to enforce the Ramirez settlement and scheduled the motion hearing to take place on June 25, 2013. Chavez cannot now argue that he was deprived of adequate notice. Moreover, Chavez cites to no relevant legal authority to support his argument that CR 56(c) procedures apply to a motion to enforce a settlement agreement. His claim is unavailing.

[8] Chavez raised this argument for the first time to the trial court in his motion for reconsideration.

[9] CP at 86.

discovery violations for which they were sanctioned. But Chavez has cited to no relevant legal authority to support this argument.

A trial court has broad discretion when imposing discovery sanctions pursuant to CR 26(g). Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A reviewing court will find that the trial court abused its discretion if a trial court's findings are not clearly supported by the record. Magana v. Hyundai Motor Am., 167 Wn.2d 570, 583, 220 P.3d 191 (2009). Here, the trial court's findings are supported by the record. The evidence demonstrates that on numerous occasions, Jacobson falsely represented to McLaughlin that he was the attorney representing Rios. The trial court appears to have found that Jacobson's misrepresentation constituted a violation of CR 26(g).[10]

The evidence also shows that Jacobson failed to give notice to the plaintiffs of the discovery requests served on McLaughlin to depose and subpoena, in violation of CR 30(b)(1)[11] and CR 45(b)(2).[12]

The trial court did not abuse its discretion in imposing sanctions for Jacobson's discovery violations.

Attorney Fees on Appeal

The plaintiffs request reasonable attorney fees on appeal for the expense incurred in responding to the issue of discovery sanctions. Because the plaintiffs are entitled to reasonable attorney fees under RAP 18.1(a) and CR 26(g), we grant their request.

---

[10] Pursuant to CR 26(g), discovery requests made by a represented party must be signed by at least one attorney of record. The attorney's signature "constitutes a certification that he has read the request."

[11] CR 30(b)(1) requires that a party seeking to depose a person give reasonable notice in writing to all other parties to the action.

[12] Pursuant to CR 45(b)(2), "A subpoena commanding production of documents and things . . . shall be served on each party in the manner prescribed by rule 5(b)."

Under RAP 18.1(a), this court may grant attorney fees if applicable law permits the right to such recovery. In <u>Washington Motorsports Ltd. Partnership v. Spokane Raceway Park, Inc.</u>, 168 Wn. App. 710, 719, 282 P.3d 1107 (2012), relying on the Supreme Court's decision in <u>Magana</u>, 167 Wn.2d 570, we granted a request for attorney fees pursuant to RAP 18.1(a) and CR 26(g). Accordingly, because we affirm the trial court's discovery sanctions against Chavez and Jacobson, we find it appropriate to award attorney fees to the plaintiffs for responding to this issue on appeal.[13]

Affirmed.

Trickey, J.

WE CONCUR:

Dwyer, J.

Becker, J.

---

[13] The plaintiffs refer to the arbitrator's award in their briefing on appeal, and the award is noted in the supplemental clerk's papers. Chavez filed a motion to strike such references. Where a party seeks a trial de novo following an adverse arbitration decision, "[t]he trial de novo shall be conducted as though no arbitration proceeding had occurred." MAR 7.2(b)(1). During the trial de novo, "[n]o reference shall be made to the arbitration award." MAR 7.2(b)(1). This appeal does not concern review of a trial de novo. Moreover, Chavez cites to no legal authority in support of his proposition that reference to the arbitration award is prohibited at the appellate level. We deny Chavez's motion to strike.