# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GOEBEL DESIGN GROUP, LLC, an Arizona limited liability company, | ) ) ) | No. 77090-0-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CLEAR NRG, LLC d/b/a INNOVA CONSTRUCTION, a Washington limited liability company; WESTERN SURETY CO., a domestic/foreign insurer, | ) ) ) ) ) ) | |
| Appellants. | ) ) | FILED: August 6, 2018 |

APPELWICK, C.J. — The trial court found that the communication between the parties' counsel constituted a settlement agreement under CR 2A. Clear argues that no agreement was formed. We reverse and remand.

## FACTS

Goebel Design Group LLC contracted with Clear NRG LLC[1] to perform services for a project. Clear agreed to (1) repair and install new carpet, (2) paint, (3) remove and install new sconces, and (4) repair and install new wallcoverings. Goebel believed Clear's performance was defective. On September 27, 2016, Goebel filed a complaint against Clear for breach of contract, unjust enrichment, a claim on Clear's bond, and attorney fees.

After Goebel filed its complaint, attorneys for Goebel and Clear began settlement discussions. Clear offered to settle for 12 monthly payments to Goebel

---

[1] Clear does business as Innova Construction. We refer to it in this opinion as "Clear."

of $2,550, with mutual waivers and releases of claims. Goebel offered to settle for $50,000, and a personal guarantee by Clear's sole member, Nigel D'Hondt. Clear declined, citing the personal guarantee. Goebel then offered to settle for $65,000 with no personal guarantee. Clear counteroffered to settle for $40,000 and a personal guarantee, or $55,000 and no personal guarantee.

Goebel made another offer to settle the lawsuit via e-mail on February 23, 2017:

> Hello David – my client is willing to do the following:
>
> - Personal guarantee
> - $2K [(thousand)] a month
> - 25 months (may need extra month with interest)
> - Confession of judgment
> - Mutual releases
> - 6% interest on unpaid balance (will provide amortization schedule) / 12% default interest
>
> The above is the deal. We are at the end of the road. Please confirm and I will prepare the documents. Thanks.

On March 13, 2017 Clear's counsel responded to this offer by stating, "Looking like my client is inclined to accept your most recent settlement proposal. Devil is in the details though. Send me the docs to review." On March 14, 2017, counsel for Goebel then sent draft settlement documents to counsel for Clear. The settlement documents included an attorney fee provision. Clear's counsel edited those documents, and returned them to Goebel on March 15. That same day counsel for Goebel responded that it had incorporated the majority of Clear's changes, except for one substantive change. Clear responded that it had not intended to make that change, and described that single rejection as "fine."

2

Five days after that exchange, counsel for Goebel e-mailed counsel for Clear stating, "[J]ust checking in on the settlement agreement. Are we good?" Clear's counsel responded the next day, "Waiting to hear back from my client." One week later, on March 28, Goebel's counsel e-mailed Clear:

> David - can you please provide me with an update. I am having trouble understanding why this is taking so long. Please note, the first payment date of April 1. No matter where we are in the process, your client should be prepared to make that payment. Thank you.

The following day, on March 29, Clear's counsel responded, "Attached payment being mailed to Goebel today. I will follow up with my client and try to get the doc[ument]s executed." The message included an image of the check made out to "Goebel Design Group." Goebel's attorney responded the same day by saying "Thank you."

But, on April 10, Clear's counsel e-mailed Goebel's counsel stating, "My client is leaning towards choosing the option with the higher amount but no personal liability. . . . My client is asking for credit for the $2,000 payment made on 4/1 to reduce the principal from 65K to 63K." Goebel's counsel responded by stating,

> [W]e already have a deal and your client has started making payments in accordance with the terms of that deal. Even more, we already negotiated the terms of the settlement agreement and COJ [(confession of judgment)]. Please have your client execute the documents that we agreed to in the middle of March so that we can put this matter to rest.

On April 24, 2017, Goebel filed a CR 2A motion to enforce the purported settlement agreement. The trial court granted the motion, and denied Clear's motion for reconsideration. Clear appeals.

## DISCUSSION

Clear makes three arguments on appeal. First, it argues that the trial court erred in determining that an agreement was formed. Second, if there was an agreement, it argues that the trial court erred in holding that that agreement is enforceable against D'Hondt personally. Third, Clear argues that the trial court erred in awarding attorney fees to Goebel under the agreement. Both parties seek attorney fees on appeal.

I.    Existence of Settlement Agreement

First, Clear argues that no contract existed, because the parties' communications were insufficient to create a contract. The content of the communications between the parties is not disputed. Instead, the parties simply disagree as to whether those communications and acts were sufficient to create an agreement.

The court's authority to enforce a settlement agreement is derived from court rule and statute. Howard v. Dimaggio, 70 Wn. App. 734, 737, 855 P.2d 335 (1993). CR 2A provides:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

And, RCW 2.44.010 provides:

> An attorney and counselor has authority:
>
> (1) To bind his or her client in any of the proceedings in an action or special proceeding by his or her agreement duly made, or

4

entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him or her, or signed by the party against whom the same is alleged, or his or her attorney.

Our Supreme Court has commented on the role of these two provisions as follows:

The purpose of the cited rule and statute is to avoid such disputes and to give certainty and finality to settlements and compromises, if they are made. While the compromise of litigation is to be encouraged, negotiations toward a compromise are not binding upon the negotiators. Where, as here, it is disputed that the negotiations culminated in an agreement, noncompliance with the rule and statute leaves the court with no alternative. It must disregard the conflicting evidence as they direct.

Eddleman v. McGhan, 45 Wn.2d 430, 432, 275 P.2d 729 (1954).

An agreement is disputed within the meaning of CR 2A if there is a genuine dispute over the existence or material terms of the agreement. In re Patterson, 93 Wn. App. 579, 583-84, 969 P.2d 1106 (1999). The party moving to enforce a settlement agreement carries the burden of proving there is no genuine dispute as to the material terms or existence of the agreement. Brinkerhoff v. Campbell, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). If the moving party meets its burden, "the nonmoving party must respond with affidavits, declarations, or other evidence to show there is a genuine issue of material fact." Patterson, 93 Wn. App. at 584.

This court reviews a decision regarding the enforcement of a settlement agreement de novo. Lavigne v. Green, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). "The trial court follows summary judgment procedures when a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed." Condon v. Condon, 177 Wn.2d 150, 161-62, 298 P.3d 86 (2013). The

trial court must view the evidence in the light most favorable to the nonmoving party and determine whether reasonable minds could reach but one conclusion. Cruz v. Chavez, 186 Wn. App. 913, 920, 347 P.3d 912 (2015).

This court applies general principles of contract law to settlement agreements. Id. A valid contract requires a meeting of the minds on the essential terms. Evans & Son, Inc. v. City of Yakima, 136 Wn. App. 471, 477, 149 P.3d 691 (2006). Washington follows the objective manifestation test for contracts. Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004). Accordingly, for a contract to form, the parties must objectively manifest their mutual assent. Id. at 177-178. To determine whether a party has manifested an intent to enter into a contract, this court imputes an intention corresponding to the reasonable meaning of a person's words and acts. Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wn.2d 572, 587, 790 P.2d 124 (1990), overruled in part on other grounds by Neah Bay Chamber of Commerce v. Dep't of Fisheries, 119 Wn.2d 464, 832 P.2d 1310 (1992). "Acceptance" is an expression, communicated by word, sign, or writing to the offeror, of the intention to be bound by the offer's terms. Veith v. Xterra Wetsuits, LLC, 144 Wn. App. 362, 366, 183 P.3d 334 (2008). Under the Restatement (Second) of Contracts § 53 (Am. Law Inst. 1981), an offeree may accept an offer by performance, provided that the offeror invites such an acceptance. And, a contract exists when the intention of the parties is plain and the terms of a contract are agreed upon even if one or both of the parties contemplated later execution of a writing. Veith 144 Wn. App. at 366.

6

To prevail, Goebel has the burden of identifying the acceptance of the contract. Brinkerhoff, 99 Wn. App. at 696-97 ("[T]he party moving to enforce a settlement agreement carries the burden of proving that there is no genuine dispute over the existence and material terms of the agreement."). Goebel's e-mail of April 10, 2017 asserted an agreement was reached mid-March. On March 13, Clear's counsel stated, "Looking like my client is inclined to accept your most recent settlement proposal. Devil is in the details though. Send me the doc[ument]s to review." This statement suggests potential future acceptance—"[l]ooking like"—but not outright acceptance by the client. When viewed in the light most favorable to Clear, it is not an objective manifestation of assent to be bound to the terms of Goebel's offer.

Counsel then exchanged contract drafts. When counsel for Clear returned the documents to Goebel on March 15, 2017, he stated, "I sent these to Nigel this morning for his input. I haven't received his input back, but I sort of doubt he'll have any further changes." When viewed in the light most favorable to Clear, it is not an objective manifestation of assent to be bound to the terms of Goebel's offer.

On March 21, 2017, Clear's counsel told Goebel that he was still waiting to hear back from his client. Then, on March 28, Goebel demanded that "[n]o matter where we are in the process, your client should be prepared to make that payment." On March 29, Clear responded, "Attached payment being mailed to Goebel today. I will follow up with my client and try to get the doc[ument]s executed." He then mailed the $2,000 payment. Goebel could have meant that "the process" was the process of formally executing the agreed upon terms, rather

7

than negotiating a settlement. But, Goebel's subjective intent is irrelevant. Keystone, 152 Wn.2d at 177 ("Washington follows the objective manifestation test for contracts."). The "process" was susceptible to at least two meanings. As such, Goebel's e-mail cannot be read as stating that an initial payment will be a manifestation of acceptance of settlement. Clear's e-mail response did not state acceptance of the proposed agreement. In a light most favorable to Clear, this e-mail exchange, coupled with the payment, does not demonstrate an objective manifestation of assent to the proposed terms.

Under the summary judgment standard applicable here, Goebel did not carry its burden. A reasonable trier of fact could conclude that the parties did not reach an agreement. We reverse the trial court's decision finding that the parties reached a CR 2(a) agreement. And, because we conclude that no agreement was reached, we reverse the trial court's award of attorney fees to Goebel, and need not address whether the agreement is personally enforceable against D'Hondt.

II. Attorney Fees

Clear argues that it is entitled to fees on appeal. The draft agreement sent from Goebel to Clear contained an attorney fee provision. That provision remained unchanged in the redlined document Clear returned to Goebel.

RCW 4.84.330 provides for fees in any action on contracts with an attorney fee provision:

> In any action on a contract or lease . . . , where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled

8

to reasonable attorneys' fees in addition to costs and necessary disbursements.

In Herzog Aluminum, Inc. v. General American Window Corp., this court observed that "the broad language '[i]n any action on a contract' found in RCW 4.84.330 encompasses any action in which it is alleged that a person is liable on a contract." 39 Wn. App. 188, 197, 692 P.2d 867, 872 (1984) (alteration in original). And, in Stryken v. Panell, we interpreted this principle from Herzog as recognizing "a right to fees in a defendant who successfully proved, in an action on a contract, that no contract had been formed." 66 Wn. App. 566, 572, 832 P.2d 890 (1992).

Here, Clear is a defendant in an action on a purported contract with a fee provision that has successfully proved that no contract had been formed. Therefore, Clear is entitled to its reasonable costs on appeal, including attorney fees.

We reverse the trial court's order recognizing a settlement agreement and awarding reasonable attorney fees to Goebel, award Clear its reasonable costs and fees on appeal, and remand to the trial court for further proceedings consistent with this opinion.

WE CONCUR:

9