IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROBERT HERBRUGER, an individual, | ) | No. 82419-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BELLEVUE COLLEGE, an agency of the State of Washington, | ) ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| GIRARD WEBER in his official and individual capacities; CYNTHIA GROSS in her official and individual capacities; DAVID HALL in his official and individual capacities; AARON HILLIARD in his official and individual capacities; DEXTER JOHNSON in his official and individual capacities; RAY WHITE in his official and individual capacities; and MARIA WOODS in her official and individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

HAZELRIGG, J. — Robert Herbruger brought suit against his former employer, Bellevue College, for breach of contract. He claims that a letter he submitted advising of the withdrawal of an appeal related to his employment constituted a binding contract on the parties. The trial court dismissed one of Herbruger's claims in an earlier motion hearing and then granted summary judgment in favor of Bellevue College on the breach of contract claim. Herbruger

challenges both the ruling of the trial court and the form of the order granting summary judgment. Finding that no contract exists, and that the trial court order on summary judgment comports with requirements under the court rules, we affirm.

FACTS

Robert Herbruger was hired by Bellevue College in July 2014 as a temporary employee in an Operations Support position with the campus. Herbruger was transferred to a different five-month project position entitled Plant Communications Coordinator with Campus Operations in February 2015. Shortly after Herbruger assumed this new role, he was dismissed from employment. In March 2015, the Washington Public Employee's Associations (WPEA) helped Herbruger file a Request for Director's Review with the State Human Resources Division related to the temporary support staff position which had ended in February. Lane Hatfield worked with Herbruger as his WPEA representative and continued to help him throughout his appeal to the State Human Resources Director.

Herbruger requested "[r]emedial action of nonpermanent or temporary appointment rules" for government employees under the Washington Administrative Code. Herbruger asserted that his appointment to the project position did not take effect until after he had worked 1,050 hours as a temporary employee in the support staff position and as a result, he should have achieved permanent status under the civil servant rules.[1]

---

[1] Title 357 WAC.

The Director's office determined that Herbruger's request for remedial action was not timely because the temporary Operations Support position at Bellevue College ended on February 5, 2015 and his request for review was submitted more than 30 days later. The Director's office also concluded that the number of hours Herbruger had worked in the Operations Support position did not exceed 1,050 hours and thus he did not meet the conditions for remedial action under WAC 357-19-450.

Hatfield, acting on Herbruger's behalf, appealed the Director's Determination to the Personnel Resources Board (PRB)[2]. In her May 22, 2015 letter asking the PRB to overturn the Director's Determination, Hatfield argued that Herbruger's appeal was timely and that Bellevue College did not effectively complete Herbruger's change from a temporary appointment until after he had surpassed 1,049 hours of work as a temporary employee. She asserted that he therefore met the conditions for which the Director may take remedial action under WAC 357-19-450. Herbruger requested a remedy directing Bellevue College to appoint him to a "Plant Communications Coordinator" position with permanent status, despite the fact that his appeal request was premised on his assertion that he had accrued the requisite number of hours in a different position.

In early November 2015, the Assistant Attorney General (AAG) representing Bellevue College had a telephone conversation with Hatfield about withdrawing Herbruger's appeal. Following the conversation, the AAG emailed

---

[2] A body within the State Human Resources Division, Office of Financial Management.

Hatfield the following as proposed language for a cover letter to accompany

Herbruger's appeal withdrawal form to the PRB:

> The parties are in agreement that Mr. Herbruger's appeal number R-RULE-15-003 will be withdrawn. Bellevue College will work with Mr. Herbruger to resubmit his Request for Remedial Action for Director's Review. The college will not be objecting to Mr. Herbruger's position that he surpassed 1050 hours of work on February 9, 2015.

When the AAG asked Hatfield to confirm her satisfaction with the language,

Hatfield proposed the following change: instead of, "Bellevue College will work with

Mr. Herbruger to resubmit his Request for Remedial Action for Director's Review,"

Hatfield proposed, "Bellevue College will work with Mr. Herbruger to complete the

employment process normally resulting from a successful, timely appeal."

> Another AAG representing Bellevue College replied to Hatfield:

> I want to make sure that we understand your proposed language correctly, though. As I read it, the language requires Bellevue to work with Mr. Herbruger following a successful appeal, and not that Bellevue ensures a successful appeal. With that understanding, I think the language you have is good.

Hatfield responded:

> Since we're not talking about taking this back to the PRB but working with Bellevue to look at potential job positions (since Bobby's previous work was apparently already completed) which is what they would have done if the original Director's appeal had been successful. I was trying to find a way of describing that process of looking for job options. I understand that we don't know what we'll find at the end of the process.

The AAG replied, "That is an accurate summary of our conversation this morning."

> On November 13, 2015, Hatfield wrote to the Hearing Coordinator at the

PRB to notify the Board that Herbruger was withdrawing his appeal:

> This letter and the accompanying withdrawal form should serve to notify the Board of the withdrawal of appeal and settlement of the

> case in [Robert Herbruger v. Bellevue College] Case #R-RULE-15-003.
>
> The parties are in agreement that Mr. Herbruger's appeal will be withdrawn. Bellevue College will work with Mr. Herbruger to complete the employment process normally resulting from a successful, timely appeal.
>
> The College does not object to Mr. Herbruger's position that he surpassed 1050 hours of work on February 9, 2015.

Both Hatfield and the original AAG with whom she had been working signed the letter to the Board, but Herbruger did not.

Five days after Herbruger withdrew his appeal, the AAG notified Hatfield of two open classified positions at Bellevue College. Hatfield forwarded that communication to Herbruger asking him if "either of these positions is something you're qualified for?" Herbruger responded two days later, "After consideration and thought, I request to be reinstated back into my position in Campus Operations, a position for which I am well suited and qualified."

Herbruger was placed on the layoff list at Bellevue College. Both Bellevue College and WPEA attempted to determine whether Herbruger was qualified for any open classified positions by repeatedly asking him to provide an updated resume. Herbruger never provided one.

Herbruger later filed suit against Bellevue College for breach of contract and due process violations by individuals at the college as a result of his dismissal from employment. Early in the litigation, Bellevue College filed a CR 12(c) motion to dismiss the 42 U.S.C. § 1983 claims Herbruger brought against the individual defendants and the breach of contract claim. Herbruger opposed the motion and argued the court should treat it as a motion for summary judgment under CR 56.

The court dismissed the individual defendants under CR 12(c), but denied Bellevue College's motion to dismiss on the breach of contract claim after considering it under a summary judgment standard.

Following discovery, Bellevue College moved for summary judgment on the remaining breach of contract claim. Bellevue College's position was that no contract existed between the parties and that the school had met any obligations to Herbruger that it may have owed. Following oral argument on the motion, the court granted summary judgment in favor of Bellevue College and dismissed the remaining claim. Herbruger now appeals.

ANALYSIS

Herbruger argues the trial court improperly granted Bellevue College's motion for summary judgment. He further assigns error to the form of the order granting summary judgment, alleging that it fails to comport with the requirements of CR 56 and lacked necessary findings, thus impacting review.

Before reaching the substance of Herbruger's appeal, we address his assignment of error as to form. Contrary to Herbruger's assertion, CR 52(a)(5)(B) expressly states that findings of fact and conclusions of law are unnecessary for decisions on motions for summary judgment. "Any [findings] that are entered may be disregarded on appeal, because summary judgment determines issues of law, not issues of fact." Redding v. Va. Mason Med. Ctr., 75 Wn. App. 424, 426, 878 P.2d 483, 484 (1994) (citing Duckworth v City of Bonney Lake, 91 Wn.2d 19, 586 P.2d 860 (1978)).

Herbruger also argues that the trial court's order granting summary judgment in favor of Bellevue College does not indicate whether extrinsic evidence was considered, specifically the unrelated remedial action appeal of another person and Herbruger's deposition testimony, therefore it did not comply with CR 56(h). That rule requires that "[t]he order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment [is] entered." The order states "The Court has heard oral arguments and considered <u>the files and pleadings in this case</u>" and then proceeds to specifically set out only two additional documents: Bellevue College's motion for summary judgment and a declaration and attached exhibits in support of that motion. (Emphasis added). The record confirms that the court also reviewed the documents regarding two other appeals that Herbruger argues should have been considered and his own deposition testimony. These documents were included as exhibits to the pleadings of this case and the transcript of the hearing clearly demonstrates that the court considered them.

A trial court's failure to list in the summary judgment each declaration and pleading considered is a technical error but a harmless one when the declarations and pleadings are all included in the record on appeal. <u>W.R. Grace & Co.—Conn. v. Dept. of Revenue</u>, 137 Wn.2d 580, 591, 973 P.2d 1011 (1999); <u>Citibank S.D. N.A. v. Ryan</u>, 160 Wn. App. 286, 290 n. 1, 247 P.3d 778 (2011) (trial court order was technically erroneous because it did not specifically list responsive materials but error is harmless). Accordingly, while the court should have expressly included

those documents in the enumerated list contained in the order granting summary judgment, its failure to do so was harmless. However, despite this nonprejudicial irregularity, we now consider whether the court's ultimate ruling was proper.

This court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Gunnier v. Yakima Heart Ctr., Inc., 134 Wn.2d 854, 858, 953 P.2d 1162 (1998). The reviewing court "may affirm on any basis supported by the record." Redding, 75 Wn. App. at 426 (citing Hadley v. Cowan, 60 Wn. App. 433, 444, 804 P.2d 1271 (1991)). Summary judgment dismissal is proper if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). "The facts and all reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo." Hollis v. Garwall, Inc., 137 Wn.2d 683, 690, 974 P.2d 836 (1999). "If reasonable minds can reach different conclusions, summary judgment is improper." Kalmas v. Wagner, 133 Wn.2d 210, 215, 943 P.2d 1369 (1997).

As made clear by the focus of the parties' briefing and argument to the trial court on summary judgment, the substantive issue before us is whether the November 13, 2015 letter signed by Herbruger's union representative and an AAG representing Bellevue College constitutes an enforceable contract between the parties. The essential elements of a contract are the subject matter, the parties, the promise, the terms and conditions, and the price or consideration. DePhillips v. Zolt Const. Co., Inc., 136 Wn.2d 26, 31, 959 P.2d 1104 (1998). A contract requires offer, acceptance, and consideration; without such no valid contract

exists. <u>Veith v. Xterra Wetsuits, LLC</u>, 144 Wn. App. 362, 366–67, 183 P.3d 334 (2008). Acceptance is an expression of the intention to be bound by the offer's terms. <u>Id.</u> In a breach of contract claim, the burden is on the plaintiff to prove that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged. <u>Lehrer v. Dep't of Soc. & Health Servs.</u>, 101 Wn. App. 509, 516, 5 P.3d 722 (2000). In a motion for summary judgment, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>see also</u> <u>Guile v. Ballard Community Hospital</u>, 70 Wn. App. 18, 23, 851 P.2d 689, 692 (1993).

Washington follows the objective manifestation theory of contracts. <u>Hearst Commc'ns, Inc., v. Seattle Times Co.</u>, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." <u>Id.</u> "For a contract to exist, there must be a mutual intention or 'meeting of the minds' on the essential terms of the agreement." <u>Saluteen-Maschersky v. Countrywise Funding Corp.</u>, 105 Wn. App. 846, 851, 22 P.3d 804 (2001) (quoting <u>McEachren v. Sherwood & Roberts, Inc.</u>, 36 Wn. App. 576, 579, 675 P.2d 1266 (1984)). The terms assented to must be sufficiently definite. <u>Keystone Land & Dev. Co. v. Xerox Corp.</u>, 152 Wn.2d 171, 178, 94 P.3d 945 (2004). "If an offer is so indefinite that a court cannot decide just what it means, and fix exactly the legal liability of the parties, its acceptance cannot result

in an enforceable agreement." Sandeman v. Syres, 50 Wn.2d 539, 541, 314 P.2d 428 (1957). "[A]n agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete is unenforceable." Id. at 541–42.

The body of the letter that Herbruger argues constitutes a contract reads as follows:

> This letter and the accompanying withdrawal form should serve to notify the Board of the withdrawal of appeal and settlement of the case in [Robert Herbruger v. Bellevue College] Case #R-RULE-15-003.
>
> The parties are in agreement that Mr. Herbruger's appeal will be withdrawn. Bellevue College will work with Mr. Herbruger to complete the employment process normally resulting from a successful, timely appeal.
>
> The College does not object to Mr. Herbruger's position that he surpassed 1050 hours of work on February 9, 2015.

The crux of Herbruger's argument is that these three sentences notifying the PRB Hearing Coordinator of the withdrawal of his appeal were also intended to bind the parties. The question for this panel is, to what? Here, the language "process normally resulting from a successful, timely appeal" is vague at best. Based on the four corners of the document, we cannot conclude that it clearly reflects mutual assent to any agreed upon terms by which the parties intended to be bound. Though Herbruger points to the remedial action set forth in WAC 357-19-450 as defining "the employment process normally resulting from a successful, timely appeal," this cannot be discerned from the language contained in this letter. The same is true as to Herbruger's desire to raise results of two wholly separate PRB appeals of other parties, which he continuously referenced throughout the

negotiation and litigation. He contends that both the process set out in the WAC and the procedural histories and outcomes of the appeals define the "process normally resulting from a successful, timely appeal."

Because this letter is vague on its face, it's proper to consider parol evidence. DePhillips, 136 Wn.2d at 32. "'[P]arol evidence is admissible . . . for the purpose of ascertaining the intention of the parties and properly construing the writing.'" Id. (alterations in original) (internal quotation marks omitted) (quoting Berg v. Hudesman, 115 Wn.2d 657, 669, 801 P.2d 222 (1990)). "[T]he 'parol evidence rule' precludes use of parol evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract." Id.

Neither party disputes the email exchange between Hatfield and Davis, which was properly considered as extrinsic evidence and goes to the question of their mutual understanding. The email exchange makes clear that neither party intended to be bound to a particular result, or even a specific process, and that this letter merely memorialized the parties' understanding that the appeal would be withdrawn and Bellevue College would work with Herbruger to find a suitable position if one was available. Hatfield expressly indicated "I understand that we don't know what we'll find at the end of the process." Further, the email thread clearly demonstrates that Hatfield contacted Herbruger and indicated the "employment process" in the letter "means working with Bellevue College to find another equivalent job on campus."

Herbruger now discusses WAC 357-19-450 and wishes the focus to be on records regarding two completely separate appeals. However, this position

ignores a key fact: the job to which Herbruger sought reappointment via remedial action was a project position which the Director's Review Program Investigator expressly determined was not subject to such action under the WAC. Herbruger does not attempt to explain why the WAC would guide the process here despite this factual distinction from the successful remedial action appeals he presented to the court. More importantly, however, there is nothing in the record before us to suggest that Bellevue College agreed that either the WAC or the cited appeals would guide their process with Herbruger. If the intention of the parties was to have the sort of specificity that Herbruger posits, it is puzzling that neither the AAG nor WPEA representative identified the rules they intended to guide this process in the letter.

Even if the record suggested, as Herbruger asserts, these were in fact the terms of the agreement with Bellevue College, Herbruger actively failed to cooperate when Bellevue College reached out about other positions on campus. Numerous depositions discuss Herbruger's failure to provide a resume after multiple inquiries from Bellevue College. Additionally, when Bellevue College sent Herbruger information about two open classified positions and inquired if he was qualified for either, he replied "After consideration and thought. I request to be reinstated back into my position in Campus Operations, a position for which I am well suited and qualified." It is clear that Herbruger sought one position and one position only, which was neither set out in the letter he now claims to bind the parties, nor in the email thread preceding the letter. Even with the benefit of all reasonable inferences as the non-moving party, the record is clear that

Herbruger's expectation was not communicated to Bellevue College during discussions of the withdrawal of his appeal, so there cannot be mutual assent as to this purported term.

As such, the November 13, 2015 letter does not constitute a valid contract and the trial court did not err in dismissing the breach of contract claim on summary judgment.

Affirmed.

WE CONCUR:

Andrus, A.C.J.

Dwyer, J.