[No. 41165-9-I.    Division One.    January 19, 1999.]

*In the Matter of* KEVIN C. PATTERSON, *Appellant,* and
RICHARD P. TAYLOR, *Respondent.*

580

*Jan M. Dyer*, for appellant.

*Richard P. Taylor,* pro se.

APPELWICK, J. — A settlement agreement, negotiated and signed by the parties to the litigation, which stipulates that it is enforceable under CR 2A, does not require the signatures of the parties' attorneys before it will be enforced. Kevin Patterson and Richard Taylor signed an agreement to settle their property dispute; their attorneys did not. Patterson did not show that the agreement should not be enforced under CR 2A because of fraud, coercion, a mistake, or lack of authority. Therefore, we affirm the trial court's decision enforcing the agreement.

## Facts

Kevin Patterson filed a petition to partition and quiet title to three parcels of real property he and Richard Taylor owned. Both Patterson and Taylor were represented by counsel, but they agreed to meet with a mediator without their attorneys present. At the conclusion of the January mediation, they signed a settlement agreement, which stated it was "a binding agreement enforceable under CR 2A of the Civil Rules of Superior Court." But almost five months after the settlement agreement was signed and documents were executed in compliance with the agreement, Patterson's lawyer contended in a letter to Taylor's lawyer that the agreement was not binding.

Taylor filed a motion in July to enforce the agreement. In support, he attached a declaration explaining that before

the mediation he and Patterson agreed in writing that a CR 2A agreement was binding " 'if signed by both parties.' " Taylor also explained that both he and Patterson had proceeded as if the settlement agreement were binding and enforceable.

In response, Patterson agreed that he and Taylor reached an agreement at the mediation, but claimed he was coerced into signing the written agreement before he could consult with his attorney. He argued that a CR 2A agreement is not binding unless it was signed by the parties' attorneys, so the agreement he signed was not binding. He also argued fraud in valuing one parcel, and mistake about CR 2A and his right to consult counsel.

The trial court granted Taylor's motion to enforce the agreement. This appeal followed.

## CR 2A

■■ CR 2A provides as follows:

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

CR 2A applies only when (1) the agreement was made by the parties or attorneys "in respect to the proceedings in a cause[,]" and (2) the purport of the agreement is disputed.[1]

> When these elements are met, CR 2A supplements but does not supplant the common law of contracts. It precludes enforcement of a disputed settlement agreement not made in writing or put on the record, whether or not common law

---

[1] *In re Marriage of Ferree*, 71 Wn. App. 35, 39, 856 P.2d 706 (1993).

requirements are met. However, it does not affect an agreement made in writing, or put on the record.[2]

In this case, a cause of action was pending between the parties. At the conclusion of mediation, Patterson and Taylor signed a document titled "Settlement Agreement." Thus, the requirement that the purported agreement was reached "in respect to the proceedings in a cause" is satisfied.

Patterson asserts the agreement is not enforceable because it is "in dispute" and was not signed by counsel as required by CR 2A. We disagree.

### The Agreement Is Not In Dispute

■ ■ An agreement is disputed within the meaning of CR 2A only if there is a genuine dispute over the existence or material terms of the agreement:[3]

> On its face, CR 2A says that the "purport" of the agreement must be disputed. According to Black's Law Dictionary, the "purport" of something is its meaning, import, substantial meaning, substance, legal effect. According to *Webster's Third New International Dictionary*, the "purport" of something is the meaning it conveys, professes or implies, or its substance or gist. The substance, gist, or legal effect of an agreement is found in its existence and material terms, and it follows that the "purport" of an agreement is disputed only when its existence or material terms are disputed.

> [And], the dispute must be a genuine one. The purpose of CR 2A is not to impede without reason the enforcement of agreements intended to settle or narrow a cause of action; indeed, the compromise of litigation is to be encouraged. Rather, the purpose of CR 2A is to insure that negotiations undertaken to avert or simplify trial do not propagate additional disputes that then must be tried along with the original one. This purpose is served by barring enforcement of an alleged settlement agreement that is genuinely disputed, for

---

[2]*Ferree*, 71 Wn. App. at 39-40.

[3]*Ferree*, 71 Wn. App. at 40.

such a dispute adds to the issues that must be tried. It is not served by barring enforcement of an alleged settlement agreement that is not genuinely disputed, for a nongenuine dispute can be, and should be, summarily resolved without trial.

Summary judgment procedures are applied to determine whether there is a genuine dispute regarding the existence and material terms of a settlement agreement.[4] The moving party has the burden to prove there are no genuine disputes regarding the agreement's existence or material terms.[5] If the moving party produces evidence that shows the absence of any genuine disputes, the nonmoving party must respond with affidavits, declarations, or other evidence to show there is a genuine issue of material fact.[6]

In this case, Taylor met his burden of establishing the existence of a settlement agreement and the absence of a dispute over its material terms. The burden, therefore, shifted to Patterson to disprove the existence of the agreement and to show there was a genuine dispute of a material term of the agreement. Patterson, however, admitted that an agreement had been reached and did not dispute its terms. Rather, he asserted it should not be enforced because it was not signed by his attorney, and because of fraud, coercion, and mistakes.

### The Attorney's Signature Was Not Required

Patterson contends that an agreement must be signed by the parties' attorneys to be binding under CR 2A. This claim derives from the last line of CR 2A, which indicates the court will not regard a settlement agreement "unless the evidence thereof shall be in writing and *subscribed by the attorneys* denying the same." (Emphasis added). Patterson argues this language must be read literally.

---

[4]*See Ferree*, 71 Wn. App. at 41-44.

[5]*Ferree*, 71 Wn. App. at 41.

[6]*Ferree*, 71 Wn. App. at 44.

The opening portion of CR 2A, however, reads "No agreement or consent between parties or attorneys . . . ." The rule clearly anticipates that parties may directly enter into settlements. Moreover, an attorney is only an agent. A party may settle a case with or without an attorney. When the party undertakes a settlement directly with the other party, reduces it to writing, and signs it, as in this case, the requirements of CR 2A are met just as if the attorney had participated. It would be unfair to the other party to hold otherwise.

Patterson had authority to resolve his dispute with Taylor by signing the settlement agreement under CR 2A. The trial court did not abuse its discretion in enforcing the agreement.

### Coercion

Patterson asserted in his declaration that the mediator coerced him into signing the agreement:

> He kept stating that if I didn't sign the agreement I would ruin his record of being always able to settle the case . . . I just gave in and signed it. I felt I was signing under coercion and duress. I was never given an opportunity to call my attorney during the mediation nor was I given the mediation agreement to take back to my attorney to review and then sign if we agreed.

No other evidence is offered to support his allegation of coercion. There is no evidence that Patterson (1) gave notice to Taylor or the mediator that he wished to have the agreement reviewed by counsel, (2) asked for, but was denied, an opportunity to consult with his attorney, or (3) expressed a desire to terminate the mediation without signing the agreement and was prevented from doing so.

Moreover, Patterson admitted that he and his attorney decided to "comply with the terms of the agreement, in a good faith effort to resolve the matter." He also relied upon the agreement by using the mediator, whom he alleged had coerced him, to resolve the issue of an apology owed to him.

Patterson bore the burden of proving coercion. We review a trial court's decision to enforce a settlement agreement under CR 2A for an abuse of discretion.[7] Given the lack of evidence Patterson presented to support his coercion claim, the trial court did not abuse its discretion by rejecting that claim.

## Fraud

The parties agreed to value their 19th Avenue property at $135,000 for settlement purposes, but Taylor sold it for $169,500 just two months later. Patterson "felt very strongly that the house was worth much more than $135,000[,]" and proposed an appraisal, but abandoned that tack when Taylor would not agree to pay half the cost. After the agreement was signed, Patterson alleged, but offered no evidence, that Taylor knew at mediation that the property had a higher value than Taylor asserted. Patterson claims this amounts to fraud as to a material term of the agreement.

"To establish fraud, the plaintiff must demonstrate: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) speaker's knowledge of its falsity; (5) speaker's intention that it shall be acted upon by the plaintiff; (6) plaintiff's ignorance of falsity; (7) reliance; (8) right to rely; and (9) damages."[8]

For at least three reasons, Patterson's fraud claim fails. He failed to prove: (1) Taylor knew the value was too low; (2) he himself was unaware that the value was too low; and (3) he had a right to rely on the representation after he dropped his appraisal request and agreed to the value. The trial court did not abuse its discretion by failing to find fraud.

## Mistake of Fact as to Value

Patterson's declaration established that he believed the

---

[7]*Morris v. Maks*, 69 Wn. App. 865, 850 P.2d 1357 (1993).

[8]*Chen v. State*, 86 Wn. App. 183, 188, 937 P.2d 612, *review denied*, 133 Wn.2d 1020 (1997).

19th Avenue property was worth more than $135,000 at the time of mediation and that he had argued for a higher value. He said he wanted an appraisal, but dropped the idea and agreed to the $135,000 value when Taylor would not agree to share the appraisal costs and continued to insist that he would not agree to a higher value. The record contains no evidence that Taylor knew the value of the residence was higher than $135,000. No claim or evidence suggests Patterson could not have had the appraisal done at his own expense and/or that the settlement could not have been conditioned on an appraisal. These facts support a conclusion that Patterson made a choice, which he may now regret, but which does not constitute a basis for overturning the contract.[9] The trial court did not abuse its discretion by failing to find a mistake of material fact.

## Mistake as to Effect of CR 2A

Patterson's declaration stated:

> I agree to mediate the issues between Richard and I, but never agreed that any agreement would be binding on me until and unless it was approved and reviewed by my own attorney . . . [a]t that time I had no idea what a "CR 2A Agreement" was.

Taylor's declaration asserts:

> Petitioner and I both were required to sign a document called *TERMS AND CONDITIONS OF MEDIATION* before the mediation took place. . . . Paragraph 2 of the document clearly explains that a CR 2A Agreement is a *"binding and enforceable* agreement . . . if signed by both parties."[10]

---

[9]*Snap-On Tools Corp. v. Roberts*, 35 Wn. App. 32, 34, 35, 665 P.2d 417 (1983) (a unilateral mistake generally is not grounds for rescinding a contract unless one party is mistaken about a material fact of the contract and the other party knows or has reason to know of the mistake).

[10]The actual preliminary agreement that set forth the terms and conditions of the mediation is not part of the record on appeal. Had such a document been presented, the opinion might well focus on sanctions for frivolous appeal.

Patterson does not deny Taylor's assertion. Nor does Patterson claim that he asked for, but was denied, an explanation of CR 2A.

Mediation and other dispute resolution ordered by the court are intended to achieve settlements in whole or in part. Patterson does not appear to argue that his participation in mediation, without his attorney in attendance, was pro forma or lacking in good faith. Reasonably, he should have expected efforts in mediation to focus on settlement. Patterson offers no objective evidence that he conditioned any participation in mediation on subsequent review and approval by his attorney of any proposed settlement. He offers only the subjective statement in his trial declaration that he did not agree to be bound. But a person's unexpressed intentions are not binding:

> The Washington court has long adhered to the objective manifestation theory in construing the words and acts of alleged contractual parties. We impute to a person an intention corresponding to the reasonable meaning of his words and acts. Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties.[11]

The language of the settlement agreement advised the parties that it was binding and enforceable whether or not either party specifically knew the meaning of CR 2A. The opening paragraph provided: "The terms which follow constitute a binding agreement enforceable under CR 2A of the Civil Rules of Superior Court." The last paragraph above the parties' signatures read: "Signed by the parties as a binding CR 2A agreement." Nowhere was there language making the finality of the agreement conditional.

Patterson could have prevented this result by having counsel attend the mediation or by informing the mediator in writing in advance of mediation that any agreements would be conditioned upon review and approval by counsel. He also could have refused to sign until he met with his

---

[11]*Morris v. Maks*, 69 Wn. App. 865, 871-72, 850 P.2d 1357 (1993).

counsel. Patterson signed the agreement. He may have made a mistake, but the court is not compelled to relieve him of it.

The provision that the settlement agreement was enforceable as a CR 2A agreement was not a term material to the resolution of the underlying litigation to partition the property.[12] Mistake as to the effect of the "CR 2A" provisions, therefore, did not give rise to a genuine dispute of material fact. Patterson could not use it as a basis to invoke CR 2A defensively.

The trial court did not abuse its discretion when it declined to find mistake of fact based on Patterson's misunderstanding of CR 2A.

## Conclusion

CR 2A is a defense that may be asserted to block summary enforcement of an agreement resolving all or part of a case. When a genuine dispute over the existence of the agreement or of a material term is established by the party resisting enforcement, the moving party may prevail either by showing the disputed agreement was made on the record or by showing it was reduced to writing and signed by the party or attorney denying the agreement.

Patterson failed to establish a genuine dispute over the existence of the agreement or a material term. As such, he could not assert CR 2A to resist enforcement of the agreement. The trial court did not abuse its discretion in enforcing the agreement.

The trial court's judgment is affirmed. The respondent on appeal is awarded fees.

KENNEDY, C.J., and COX, J., concur.

---

[12]*Morris*, 69 Wn. App. at 869-70.