# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALFRED TALL, individually, | No. 57202-8-II |
| Respondent, | |
| v. | |
| GOOD NIGHT MEDICAL LLC, f/k/a SHC ACQUISITIONS, LLC, an Ohio Limited Liability Company d/b/a Sleep Health; COPPER CREEK MEDICAL, INC., d/b/a Good Night Medical of Washington, Inc. and ALAN T. RUDY and JANE DOE RUDY, husband and wife, | UNPUBLISHED OPINION |
| Appellants. | |

MAXA, J. – Good Night Medical LLC, Copper Creek Medical Inc., and their owner and chief executive officer Alan Rudy (collectively GNM) appeal the trial court's grant of summary judgment in favor of Alfred Tall. The trial court's summary judgment order enforced a CR 2A agreement that Tall and Rudy executed after a mediation with the Judicial Arbitration and Mediation Service (JAMS) to settle a lawsuit that Tall filed against GNM.

The CR 2A agreement stated that GNM agreed to pay Tall a total of $525,000, with an initial payment of $25,000 and monthly payments until the balance (and accrued interest) was paid. The CR 2A agreement also stated that the parties would execute a comprehensive final settlement agreement that would include certain specified terms. And if a dispute arose regarding the preparation and execution of the final settlement agreement, the CR 2A agreement stated that the dispute would be resolved by arbitration with JAMS.

GNM and Tall never executed a final settlement agreement. However, GNM paid Tall the initial $25,000 as required by the CR 2A agreement terms and made several monthly payments before discontinuing all payments.

After GNM stopped making monthly payments, Tall filed a lawsuit to enforce the CR 2A agreement. The trial court granted Tall's summary judgment motion, ruling that the CR 2A agreement was an enforceable settlement contract. The court entered judgment against GNM for unpaid monthly payments to date plus interest. The court also ordered the parties to present any dispute arising out of the preparation and execution of the final settlement terms to JAMS for resolution in accordance with the CR 2A agreement.

We hold that the trial court did not err in ruling that the CR 2A agreement was an enforceable settlement contract and ordering that any disputes regarding the preparation and execution of the final settlement agreement be presented to JAMS. Accordingly, we affirm the trial court's summary judgment order.

FACTS

*Background*

Rudy was the owner and chief executive officer of GNM, an Ohio company that provided sleep apnea equipment and services in various locations across the United States. Tall owned Copper Creek Medical, a sleep health business that involved the diagnosis of sleep apnea and the sale and repair of home CPAP machines.

In 2013, GNM sought to acquire Copper Creek Medical and entered into a stock purchase agreement and management agreement with Tall. The initial purchase price was set at $7 million. Tall was retained as a consultant for Copper Creek Medical for a year under an

employment agreement, which provided him with a salary of $45,000 per year plus health insurance benefits. The transaction closed in the beginning of 2014.

Within months of closing, GNM discovered that Copper Creek Medical had a $179,663 debt to the Internal Revenue Service and an $861,398 debt to the Washington Department of Revenue. GNM eventually settled the debts, and then fired Tall in April 2014.

In 2016, Tall filed a suit against GNM for breach of the stock purchase agreement, employment agreement and management agreement, and for defamation. Tall was represented by attorney Stephen Burnham. GNM was represented by attorney Randall Thomsen. Rudy filed a motion for summary judgment, but the trial court denied the motion.

*CR 2A Agreement*

In May 2018, the parties engaged in a mediation through JAMS, with retired judge Thomas McPhee serving as the mediator. As a result of the mediation, Tall and GNM entered into a CR 2A agreement on May 16.

The first paragraph of the CR 2A agreement stated,

> 1. <u>Payment.</u> In full and final satisfaction of the lawsuit now pending . . . and for full mutual releases to be agreed to as between Tall, on the one hand, and Defendants, on the other, and pursuant to terms to be fully established under the terms of a final settlement agreement, Good Night Medical agrees to pay Tall a total of Five Hundred and Twenty-Five Thousand Dollars ($525,000.00).

Clerk's Papers (CP) at 111. The agreement stated that there would be an initial payment of $25,000 and then monthly installments of $4,944 until the remainder of the $500,000 was paid. The unpaid balance would accrue interest at 3.5 percent per year.

The CR 2A agreement further stated that GNM and Rudy would execute a confession of judgment in a form mutually agreed upon by the parties. If a default occurred, Tall would be entitled to seek to obtain a judgment based on the confession of judgment.

The CR 2A agreement provided as follows regarding a final settlement agreement:

4. Final Settlement Agreement. The Parties will execute a comprehensive settlement agreement with full and mutual reciprocal releases between the Plaintiff and the Defendants, and an order of dismissal of all claims in the above captioned suit with prejudice and without costs or attorneys' fees to any party. . . .

The final settlement agreement also shall include among its terms: (a) a non-disparagement clause; (b) a non-cooperation and "non-promotion" of third parties' claims clause, subject to legal process by third parties; (c) a confidentiality clause, subject to disclosure to the Parties' own accountants and attorneys and investors; (d) a provision that allows for the resolution of HIPAA information, which may include an agreement by Tall and his expert to certify the return or destruction of all HIPAA in their possession or control; and (e) standard settlement agreement provisions (e.g., full integration clause, representations as to authority, execution in counterparts, notice provision).

CP at 112. The agreement stated that GNM's counsel would prepare the first draft of the final settlement agreement and Tall's counsel would draft the notice of settlement for the court.

Section 6 of the CR 2A agreement stated,

6. Dispute Resolution. Any dispute arising out of or related to preparation and execution of the final settlement terms and documents shall be resolved by arbitration before Judge Thomas McPhee in accordance with JAMS Comprehensive Arbitration Rules and Procedures. If Judge McPhee is unable to serve as the arbitrator, JAMS will appoint an arbitrator pursuant to Comprehensive Rule 15. The arbitrator shall award reasonable attorneys' fees and costs to the prevailing party in the arbitration.

CP at 112.

The last section of the CR 2A agreement stated, "A copy of this Agreement, which is also subject to the provisions of RCW 2.44.010, may be introduced into evidence to enforce the Parties' settlement." CP at 113.

Both Tall and Rudy (individually and on behalf of GNM) signed the CR 2A agreement. Their attorneys did not sign the agreement.

4

*Subsequent Developments*

On May 24, Tall's attorney Burnham filed a notice of settlement with the trial court. The notice stated that all claims between the parties had been resolved, any trials or hearings could be stricken, and the notice was being filed with the consent of all parties.

On May 29, GNM's attorney Thomsen drafted a proposed final settlement agreement. Burnham responded with some proposed revisions. Neither document is in the record.

In August, the parties apparently agreed on the language of a final settlement agreement. Thomsen apparently sent a draft settlement agreement and related documents to Burnham. However, Rudy requested that the parties delay signing the settlement agreement until he obtained financing. And Tall objected to a subordination paragraph that had been included in the draft settlement agreement. The proposed settlement agreement did not contain all of the required items listed in the CR 2A agreement. Neither party signed the proposed final settlement agreement.

On September 5, Tall filed a motion for an order maintaining the case status as pending settlement. In an attached declaration, Burnham stated, "The parties are engaged in good faith efforts to complete all conditions of that [CR 2A agreement]. To date the parties have been unable to sign final agreements." CP at 169.[1]

Two days later, Thomsen emailed to Burnham an addendum to the CR 2A agreement stating that the initial $25,000 payment would be made by December 31, 2018 and the periodic payments would begin on September 14, 2018. However, neither party signed the addendum.

---

[1] In November, the trial court dismissed without prejudice Tall's lawsuit on its own motion because no action had been taken since the notice of settlement in May.

GNM began making the monthly $4,944.29 payments to Tall as referenced in the CR 2A agreement in September 2018. GNM also made the monthly payments in October, November and December. However, GNM did not make the $25,000 payment by December 31 as contemplated in the proposed addendum to the CR 2A agreement. Rudy indicated that GNM did not have the money to make the payment, but if GNM could obtain a new line of credit it would pay the $25,000 and get the settlement agreement finalized.

After not making monthly payments in January and February 2019, GNM made $4,944.29 payments in March and April. But still no $25,000 payment was made. In April, Tall exercised the dispute resolution section of the CR 2A agreement and sent a demand for arbitration to JAMS. Burnham stated in an email to Thomsen that his request for relief was that "the Arbitrator decide what the final terms will be, to the extent we are in disagreement." CP at 163. Burnham said he would prepare a comparison version regarding the last exchange of agreements. But the parties did not engage in arbitration because GNM wanted to try to negotiate a lump sum payoff of his obligations under the CR 2A agreement.

GNM made monthly $4,944.29 payments to Tall in May and in July through October. In addition, GNM made the $25,000 initial payment in September. However, no further payments were made after October 2019. And Thomsen withdrew as GNM's attorney.

In February 2020, Rudy contacted Burnham to discuss resuming a payment plan. Rudy proposed that GNM make lump sum payments in differing amounts depending on how soon they would be paid: $50,000 if paid within six months, $100,000 if paid within 12 months, $150,000 if paid within 18 months, or monthly payments. Not hearing back, Rudy reached out again in April to discuss a plan. Rudy stated that GNM was losing money and essentially was under the control of its creditors. Burnham responded in July that Tall would be willing to accept fixed

payments over eight years to fully pay the amount agreed in the CR 2A agreement. Burnham stated that he was confident that a judge would enforce the terms of the CR 2A agreement.

In February 2021, Tall notified Rudy that he had decided to enforce the CR 2A agreement through arbitration and that an arbitrator would be in contact with further details. Burnham also communicated with a company working on the restructuring of GNM's liabilities, and proposed a payment plan. JAMS reached out to the parties regarding the status of negotiations and whether an arbitration should be scheduled. Rudy responded that he would be challenging the validity of the mediation settlement. JAMS continued to communicate with the parties through May, but no arbitration was scheduled.

*Tall Lawsuit and Summary Judgment*

In February 2022, Tall filed a complaint against GNM, Copper Creek Medical, and Rudy. Tall alleged that the defendants had breached the CR 2A agreement, requested an award of damages for overdue payments, and sought a declaration that the defendants were in default of the CR 2A agreement. GNM asserted a counterclaim, alleging that the CR 2A agreement had no force or effect, that no settlement had yet occurred from the 2016 matter, and Tall had breached the CR 2A agreement.

Tall filed a motion for summary judgment. Tall asked the trial court to enter judgment for the unpaid balance of the settlement amount in the CR 2A agreement and to have GNM sign the final settlement documents or alternatively to participate in dispute resolution.

At oral argument, the trial court noted that the CR 2A agreement was signed by both Tall and Rudy and that it did not need the signatures of the attorneys to be enforceable. The court also noted, "The parties filed also a notice of settlement . . . [t]he parties certainly contemplated a further final settlement agreement. That does not mean, however, that the CR 2A is

7

unenforceable under Washington case law." Report of Proceedings (RP) at 19. The court found that the CR 2A agreement covered material provisions such as payment terms, default, confession of judgment, a dispute resolution clause, and pointed to clause 7, which stated that a copy of the agreement could be introduced into evidence to enforce the settlement. The court concluded that the "various clauses to be included in [the] final settlement agreement [were] not material." RP at 19. The court also pointed to the fact that Rudy performed under the CR 2A agreement by paying the $25,000 lump sum and making monthly payments.

The trial court granted summary judgment in favor of Tall. The court ruled that the CR 2A agreement was an enforceable settlement contract. The court also ruled that GNM had failed to make required payments under the CR 2A agreement, and entered judgment in favor of Tall for the overdue payments plus interest in the amount of $201,431. Finally, the court ordered the parties to "present any dispute arising out of or related to preparation and execution of the final settlement terms and documents to JAMS for resolution in accordance with the CR 2A Agreement." CP at 1048.

Rudy appeals the trial court's grant of summary judgment in favor of Tall.

ANALYSIS

A. SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences. *Id.* Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id.*

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020). A moving defendant can meet this burden by demonstrating that the plaintiff cannot support their claim with any competent evidence. *Id.* If the defendant makes such a showing, the burden shifts to the plaintiff to present evidence that creates a genuine issue of material fact. *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.*

The summary judgment standard and de novo review apply to a trial court's order enforcing a settlement agreement. *Condon v. Condon,* 177 Wn.2d 150, 162, 298 P.3d 86 (2013). If the nonmoving party raises a genuine issue of fact, the trial court errs if it enforces the agreement without holding an evidentiary hearing first. *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 697, 994 P.2d 911 (2000).

B.    ENFORCEMENT OF CR 2A AGREEMENT

GNM argues that the trial court erred in enforcing the CR 2A agreement because that agreement was merely a term sheet and the parties never signed a final settlement agreement. We disagree.

1.    Legal Principles

CR 2A and RCW 2.44.010 govern a court's authority to enforce a settlement agreement between parties to litigation. *Lavigne v. Green*, 106 Wn. App. 12, 16, 23 P.3d 515 (2001). CR 2A states,

> No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered

9

> in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

RCW 2.44.010(1) states that an attorney has authority

> To bind his or her client in any of the proceedings in an action or special proceeding by his or her agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him or her, or signed by the party against whom the same is alleged, or his or her attorney.

"The purpose of CR 2A is to give certainty and finality to settlements." *Condon*, 177 Wn.2d at 157. "This purpose . . . is not served by barring enforcement of an alleged settlement agreement that is not genuinely disputed, for a nongenuine dispute can be, and should be, summarily resolved without trial." *In re Marriage of Ferree*, 71 Wn. App. 35, 41, 856 P.2d 706 (1993).

2.    Failure of Attorneys to Sign Agreement

Initially, GNM argues that the CR 2A agreement cannot be enforced because the parties' attorneys did not sign the agreement. We disagree.

As GNM notes, CR 2A expressly states that an agreement will not be enforced unless it is "in writing and subscribed by the attorneys denying the same." Here, both Tall and Rudy signed the CR 2A agreement, but their attorneys did not.

This issue was addressed in *In re Patterson*, 93 Wn. App. 579, 585, 969 P.2d 1106 (1999). In that case, the parties were represented by counsel, but agreed to meet with a mediator without their attorneys present. *Id.* at 581. At the end of the mediation the parties both signed a settlement agreement. *Id.* One of the parties filed a motion to enforce the agreement, and one defense was that the agreement was not binding because the attorneys did not sign it. *Id.* at 581-82.

The court rejected this argument, stating as follows

> The opening portion of CR 2A . . . reads "No agreement or consent between parties or attorneys. . . ." The rule clearly anticipates that parties may directly enter into settlements. Moreover, an attorney is only an agent. A party may settle a case with or without an attorney. When the party undertakes a settlement directly with the other party, reduces it to writing, and signs it . . . the requirements of CR 2A are met just as if the attorney had participated. It would be unfair to the other party to hold otherwise.

*Id.* at 585.

We agree with the analysis in *Patterson*, which is consistent with the purpose of CR 2A stated in *Condon*, 177 Wn.2d at 157. We hold that because both Tall and Rudy signed the CR 2A agreement, the absence of their attorneys' signatures does not render the agreement unenforceable under CR 2A.

3.    Effect of Contemplation of Final Agreement

GNM does not challenge the existence or the terms of the CR 2A agreement. Instead, GNM argues that the CR 2A agreement is unenforceable because it was merely an agreement to agree on the terms of a final settlement agreement, and no final agreement was executed. We disagree.

A preliminary settlement agreement may be binding on the parties even if a final settlement agreement is contemplated. *Morris v. Maks*, 69 Wn. App. 865, 869, 850 P.2d 1357 (1993). "[T]he fact that the parties contemplated drafting a formal settlement agreement does not necessarily mean that they intended to be bound only upon execution of that document." *Id.* at 872. In determining whether a preliminary agreement is enforceable, we consider "whether (1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." *Id.* at 869.

11

On the other hand, a mere "agreement to agree" is unenforceable. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 175-76, 94 P.3d 945 (2004). The court in *Keystone* defined an agreement to agree as " 'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.' " *Id.* at 175 (quoting *Sandeman v. Sayres,* 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)).

Here, the CR 2A agreement satisfies the requirements in *Morris* of a binding preliminary agreement. First, the agreement reflected the parties' agreement on the subject matter. GNM agreed to pay Tall a specified amount of money in exchange for full and mutual releases of liability.

Second, the CR 2A agreement contains very detailed terms to which the parties agreed. These terms included the amount of the settlement payment, the timing of the payments, provisions regarding default and opportunity to cure, the execution of a confession of judgment and the conditions under which that confession could be filed, the specific terms to be included in the final settlement agreement, a dispute resolution provision, and a provision concerning the admissibility of the agreement.

GNM emphasizes that the CR 2A agreement identified 10 additional terms that the parties agreed would be included in the final settlement agreement: (1) the form of the confession of judgment, (2) mutual reciprocal releases, (3) a nondisparagement clause, (4) a noncooperation and nonpromotion of third party claims clause, (5) a confidentiality clause, (6) a clause regarding health care information, (7) a full integration clause, (8) representations as to authority, (9) execution and counterparts, and (10) a notice provision.

But this second requirement focuses on whether all the *material* terms have been included. "In determining whether settlement discussions are sufficient to establish a contract

12

even though the parties contemplate a formal agreement, we consider, among other things, whether the parties have addressed all the *material* terms of the agreement." *Lavigne*, 106 Wn. App. at 20 (emphasis added); *see also Evans & Son, Inc. v. City of Yakima*, 136 Wn. App. 471, 475-76, 149 P.3d 691 (2006) (addressing whether an exchange of correspondence contained all material terms of an agreement). The terms of the agreement must be sufficiently definite to be enforced. *Keystone*, 152 Wn.2d at 178.

Here, the CR 2A agreement contained all the material terms of the parties' settlement agreement and was sufficiently definite. The remaining terms to be included in the final settlement agreement were standard provisions that generally are not subject to dispute.

Third, the evidence shows that the parties intended the CR 2A agreement to be binding on them. Paragraph 7 of the CR 2A agreement expressly stated that a copy of the agreement "may be introduced into evidence to enforce the Parties' settlement." CP at 113. In addition, GNM generally performed its obligations under the CR 2A agreement until October 2019, making the agreed-upon $25,000 initial payment and making 10 monthly payments of $4,944.

Rudy stated in a declaration that the CR 2A agreement was "what I understood to be a term sheet outlining the broad strokes of a final settlement agreement to be negotiated between us in the then future." CP at 216. However, settlement agreements fall under the common law of contracts and we use the "objective manifestation theory of contracts which has us determine the intent of the parties. *Condon*, 177 Wn.2d at 162. We look to what is written in the document, not any unexpressed subjective intent of the parties." *Id.* In other words, if the intent of the parties can be determined from the actual words used, "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Id.* at 162-63.

When a party signs a contract, they are "presumed to have objectively manifested assent to its contents." *Cruz v. Chavez*, 186 Wn. App. 913, 920-21, 347 P.3d 912 (2015).

Here, nothing in the CR 2A agreement stated or even suggested that it was not a binding, enforceable contract. Far from outlining broad strokes, the agreement very specifically stated the amount GNM agreed to pay and when in exchange for a release of Tall's claims. Rudy's subjective, unstated intent is irrelevant and does not create a genuine issue of material fact.

GNM relies on *Keystone*, but that case is distinguishable. In that case, Xerox was selling a facility it owned and reached out to prospective buyers. 152 Wn.2d at 174. Keystone as a potential buyer sent a letter titled "offer to purchase." *Id.* at 175. Xerox responded with a letter stating that it was prepared to negotiate an agreement with Keystone subject to two modifications. *Id.* Keystone accepted the modifications. *Id.* Keystone argued that this exchange of letters created a binding agreement. *Id.* The court stated that Xerox at most manifested an intent to negotiate, not an intent to be bound. *Id.* at 179. The court concluded that no contract was formed, and at best there was an implied agreement to agree. *Id.* at 179-80.

Unlike in *Keystone*, both GNM and Tall executed a written document titled "CR 2A Agreement." This document was not just an agreement to negotiate settlement terms, but instead contained the specific terms of an agreed settlement. An enforceable contract was formed in this situation.

We hold that the trial court did not err in ruling that the CR 2A agreement was an enforceable settlement contract.

C.       DISPUTE RESOLUTION REGARDING FINAL SETTLEMENT AGREEMENT

GNM argues that the trial court erred in ordering the parties to present any dispute regarding the preparation and execution of the final settlement agreement to JAMS. We disagree.

We conclude above that the trial court did not err in ruling that the CR 2A agreement is enforceable. The CR 2A agreement's dispute resolution provision states, "Any dispute arising out of or related to preparation and execution of the final settlement terms and documents shall be resolved by arbitration before Judge Thomas McPhee in accordance with JAMS Comprehensive Arbitration Rules and Procedures." CP at 112. Because the CR 2A agreement is enforceable, this provision also is enforceable. The trial court's summary judgment order merely stated that the parties were required to comply with the dispute resolution provision to which they agreed. GNM's arguments that the dispute resolution provision somehow cannot be enforced have no merit.

We hold that the trial court did not err in ordering the parties to present any dispute regarding the preparation and execution of the final settlement agreement to JAMS.

D.       ATTORNEY FEES ON APPEAL

Tall requests attorney fees on appeal under RAP 18.1(a) and RAP 18.9(a). We decline to grant Tall his attorney fees on appeal.

RAP 18.1(a) provides that a party may have a right to recover reasonable attorney fees on appeal if applicable law grants the party the right to do so. Tall claims that paragraph 6 of the CR 2A agreement provides for the recovery of attorney fees to the prevailing party. But that clause states that the "*arbitrator* shall award reasonable attorneys' fees and costs to the

prevailing party *in the arbitration*." CP at 112 (emphasis added). The appeal is not an arbitration, so this clause is inapplicable.

RAP 18.9(a) allows for an award of attorney fees as sanctions for defending against frivolous appeals. But this appeal is not frivolous.

## CONCLUSION

We affirm the trial court's summary judgment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

GLASGOW, C.J.

VELJACIC, J.

16