

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  39065-9-III |
| Andrew Blair Hawkins, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| Deborah Ann LaBombard | ) | |
| Hawkins, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Deborah Hawkins appeals from the dissolution court's enforcement of a settlement agreement with her divorcing husband Andrew Hawkins. We affirm the enforcement since Deborah signed the agreement, Andrew imposed no undue pressure on her, the agreement terms lack any ambiguity, and public policy promotes settlements.  We also affirm the superior court's award of reasonable attorney fees and costs to Andrew.

## FACTS

Deborah and Andrew Hawkins married on October 17, 2012 and separated on March 16, 2022.  They bore no children together.  Deborah is a banker.  Andrew is a disabled military veteran.

In anticipation of dissolving their marriage Andrew and Deborah Hawkins discussed selling the couple's residence. Deborah agreed to a sale as long as she received half of the proceeds. Andrew initially consented to Deborah receiving half of the sale proceeds.

On March 25, 2022, Andrew Hawkins texted Deborah: "Remember to deduct our mortgage from our profits," "We'll only make about $100K each after closing/selling costs," "That's still okay," "I'll accept that," "Is that good for you?" Clerk's Papers (CP) at 53. Deborah responded by writing: "As long as I get half the money from the house[,] I'm fine." CP at 53. In response to Deborah's message, Andrew wrote "Yes," "You will," "I hope you're not feeling angry about it," "As long as you're okay and we do what we agreed[,] I'm fine with it." CP at 53.

On March 30, 2022, Andrew Hawkins, represented by counsel, filed a petition for marital dissolution. Contrary to the parties' earlier understanding, if not agreement, the petition asked that the parties' residence be awarded to Andrew. On April 4, 2022, Deborah, pro se, filed a response to the petition, in which she agreed to all terms outlined therein.

On April 5, Andrew Hawkins' counsel, Angel Base, emailed a settlement offer to Deborah, which offer incorporated a final dissolution order and findings and conclusion supporting the dissolution. The email read that the offer remained open until April 13.

The proposed settlement agreement allocated the couple's real property solely to Andrew Hawkins. In turn, Andrew would list the property for sale. The agreement did not assign any of the house sale proceeds to Deborah. Andrew later explained that he conditioned any promise to Deborah to allot her half of the proceeds of the house sale on his receiving other benefits, which condition was not fulfilled.

The next day, on April 6, Deborah Hawkins signed and delivered to Andrew's counsel hard copies of the settlement agreement with final orders. Andrew and his counsel signed the papers the same day. Enforcement of this settlement agreement is the subject of this appeal.

In a declaration in opposition to enforcement of the settlement agreement, Deborah Hawkins averred:

> Andrew was putting a lot of pressure on me to sign the agreement so that we could move forward with selling our home. I would not say that I was forced to sign it but Andrew was putting a lot of pressure on me to agree.

CP at 50. Deborah added:

> I was not clear on the terms of the agreement when I read it but I trusted Andrew.

CP at 50.

After entry of the settlement agreement, Andrew Hawkins listed the real property for sale. Andrew received an offer to purchase, which he wished to accept. Deborah then declined to sign the acceptance of the offer.

3

According to Deborah Hawkins, after her signing of the settlement agreement, Andrew declined to communicate with her. She called Angel Base's office numerous times on April 6, 7, and 8, but received no return call. On April 9, Deborah emailed Base:

> I would like to clarify that I get half of the proceeds of the selling of the house Andrew and I discussed.

CP at 57. Base did not respond to the email message.

Deborah Hawkins hired an attorney because of reservations regarding language in the agreement and because, to her knowledge, Andrew had not signed the agreement. Apparently, Deborah waived the attorney-client privilege. In her declaration, Deborah avowed that her counsel adjudged the agreement contrary to Andrew's oral promise that Deborah would receive some equity in the residence.

On May 11, 2022, Angel Base contacted Deborah Hawkins' counsel, Norann Beidas, and inquired as to the purpose of the latter's representation of Deborah when the parties had earlier settled. Base forwarded to Beidas the settlement agreement and dissolution order signed by Deborah. Base asked for cooperation in closing the sale of the real property. On May 11, Deborah replied by filing a notice of revocation of the settlement agreement and an amended response to the petition for marital dissolution.

In a declaration, Norann Beidas avowed, in relevant part:

> I received an email from Ms. Base on May 11, 2022, attaching the alleged settlement agreement and the proposed finals. . . . It was

4

> immediately apparent that the only signature on the alleged settlement
> agreement was that of Ms. Hawkins. Mr. Hawkins had not signed the
> agreement. We immediately revoked the offer prior to final documents
> being entered and timely filed a notice of revocation of the settlement
> agreement and amended petition on May 11, 2022.

CP at 59. We do not know if Angel Base provided Beidas a copy of the agreement signed by Andrew.

Deborah Hawkins thereafter signed the acceptance of the offer to purchase the real property. Deborah's counsel, however, sent a message to the selling agent in order to disrupt allocation of the sale proceeds. The closing agent scheduled closing of the sale for June 14, 2022.

## PROCEDURE

On May 18, 2022, Andrew Hawkins filed a motion for an order enforcing the settlement agreement. Andrew also sought an award of reasonable attorney fees and costs incurred for the expense of litigating the motion and because of a delay in the sale of the real property. Andrew sought fees and costs under RCW 4.84.185 and CR 11 and for the intransigence of Deborah. When entertaining the motion to enforce, the superior court reviewed declarations of Andrew, Deborah, Norann Beidas, and Angel Base.

On June 10, 2022, the superior court granted Andrew Hawkins' motion to enforce the settlement agreement. In the order to enforce the settlement agreement, the court noted that Deborah signed the agreement on April 6 and the agreement became binding on her with her signature regardless of whether Andrew signed, particularly since

5

No. 39065-9-III,
*In re Marriage of Hawkins*

Deborah responded to his offer. The superior court awarded Andrew reasonable attorney fees and costs against Deborah under RCW 4.84.185.

On August 17, Deborah Hawkins filed an objection to the entry of the final orders and a motion for a stay. Andrew filed two declarations opposing the motion for a stay. In one of the declarations, Andrew described the financial impact on him and housing insecurity suffered by him from a delay in the proceedings. Andrew attached financial documents that included his disability pay and housing expenses. Andrew averred:

> Deborah is earning much more than I, and that is likely why she has not submitted any of her financial information to claim financial hardship in her opposition to our Settlement Agreement and entry of final orders, nor in her request for Stay. Deborah just received a raise in February, 2022, and it is likely that she has also accepted a promotion to banker with an even much greater increase in her pay by now (she turned down the promotion previously, because she didn't want the responsibilities, but after our separation she likely accepted it as they were still in need and as she no longer has my disability payment helping with household bills).
> In the divorce, I proposed that Deborah be solely allocated the retirement account in her name, even though it was primarily funded with my separate property inheritance funds (at least $50,000 separate property with interest and increase). I also proposed that she keep all bank accounts in her name (with greater savings due to her much greater income). Because of Deborah's much greater income, and due to my disability, I had initially reserved a request for spousal maintenance. The request was reserved, because I asked for the house to be awarded to me in lieu of maintenance, so that I could sell the house and use the proceeds to support myself after our divorce when I don't have the benefit of a share accounts containing community funds nor an equitable share of the retirement account in Deborah's name that contains primarily my separate property inheritance funds.
> I was clear throughout the Motion to Enforce Settlement that I need the funds from the sale of the home in order to support myself, as I am

6

disabled and gave up other considerations in the Settlement Agreement
(especially the request for spousal maintenance, and my inheritance funds).

CP at 399-400.

On August 19, 2022, the dissolution court conducted a hearing on entry of the

final dissolution order in conformance with the parties' settlement agreement. During

that hearing, Andrew Hawkins' attorney commented about the "great disparity in income

between the parties." Report of Proceedings (Aug. 19, 2022) at 8. Deborah Hawkins did

not disagree. At the conclusion of the hearing, the dissolution court entered findings and

conclusions and a decree of dissolution.

On September 9, 2022, the dissolution court conducted a hearing on Deborah

Hawkins' motion to stay. At the hearing, Andrew Hawkins' attorney explained that

Andrew suffers from a disability and the Veterans Administration will reduce his

disability payment because of the dissolution. Andrew lost his inheritance because of

depositing the $50,000 in Deborah's retirement account. Counsel emphasized Andrew's

need for the sale of the house in order to purchase a new residence. The court granted

Deborah's motion to stay but directed the parties to submit financial documents for the

purpose of assessing spousal maintenance to be paid by Deborah to Andrew during the

stay because of the delay in the release of the sales proceeds.

Deborah Hawkins refused to provide any of her financial documents as ordered by

the superior court. On May 4, 2023, Andrew Hawkins moved to set aside the stay with

7

prejudice and for fees. In her response to Andrew's motion, Deborah indicated that she

did not oppose an order dismissing the stay. She also did not suggest that she had filed a

financial statement. The superior court granted the motion to lift the stay but denied

Andrew an award of reasonable attorney fees and costs resulting from the intransigence

of Deborah.

## LAW AND ANALYSIS

Deborah Hawkins argues that the superior court, for four reasons, erred when

enforcing the settlement agreement. First, she raised a genuine dispute over material

terms of the agreement. Second, the agreement held an ambiguity. Third, the parties

revoked the agreement before full acceptance. And fourth, public policy demands

invalidation.

### Dispute of Facts over Terms of Agreement

This court reviews a decision concerning the enforcement of a settlement

agreement de novo. *Cruz v. Chavez*, 186 Wn. App. 913, 920, 347 P.3d 912 (2015). The

trial court follows summary judgment procedures when a moving party relies on

affidavits or declarations to show that a settlement agreement is not genuinely disputed.

*Condon v. Condon*, 177 Wn.2d 150, 161-62, 298 P.3d 86 (2013). The trial court must

view the evidence in the light most favorable to the nonmoving party and determine

whether reasonable minds could reach but one conclusion. *Cruz v. Chavez*, 186 Wn.

App. 913, 920 (2015). If the nonmoving party raises a genuine issue of material fact, a

trial court abuses its discretion if it enforces the agreement without first holding an

evidentiary hearing to resolve the disputed issues of fact. *Cruz v. Chavez*, 186 Wn. App.

913, 920 (2015).

CR 2A and RCW 2.44.010 govern a trial court's authority to compel enforcement

of a settlement agreement in Washington. *Morris v. Maks*, 69 Wn. App. 865, 868, 850

P.2d 1357 (1993). RCW 2.44.010 declares:

> An attorney and counselor has authority:
> (1) To bind his or her client in any of the proceedings in an action or
> special proceeding by his or her agreement duly made, or entered upon the
> minutes of the court; but the court shall disregard all agreements and
> stipulations in relation to the conduct of, or any of the proceedings in, an
> action or special proceeding unless such agreement or stipulation be made
> in open court, or in presence of the clerk, and entered in the minutes by him
> or her, *or signed by the party against whom the same is alleged*, or his or
> her attorney.

(Emphasis added.) CR 2A reads:

> No agreement or consent between parties or attorneys in respect to
> the proceedings in a cause, the purport of which is disputed, will be
> regarded by the court unless the same shall have been made and assented to
> in open court on the record, or entered in the minutes, or unless the
> evidence thereof shall be in writing and subscribed by the attorneys
> denying the same.

CR 2A applies only when (1) the agreement was made by the parties or attorneys

in respect to the proceedings in a pending case, and (2) the parties dispute the terms of the

agreement. *Lavigne v. Green*, 106 Wn. App. 12, 17, 23 P.3d 515 (2001). When these

elements are met, CR 2A supplements but does not supplant the common law of contracts. *In re Marriage of Ferree*, 71 Wn. App. 35, 39, 856 P.2d 706 (1993).

An agreement is disputed within the meaning of CR 2A if a party posits a genuine dispute over the existence or material terms of the agreement. *In re Patterson*, 93 Wn. App. 579, 583, 969 P.2d 1106 (1999). The party moving to enforce a settlement agreement carries the burden of proving no genuine dispute exists as to the material terms or existence of the agreement. *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000). If the moving party meets its burden, the nonmoving party must respond with affidavits, declarations, or other evidence to show a genuine issue of material fact. *In re Patterson*, 93 Wn. App. 579, 584 (1999); *Cruz v. Chavez*, 186 Wn. App. 913, 919-20 (2015).

This court applies general principles of contract law to settlement agreements. *Cruz v. Chavez*, 186 Wn. App. 913, 920-21 (2015). A contract forms only when the parties objectively manifest their mutual assent. *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004). Manifestations of mutual assent are typically expressed by an offer and acceptance. *Keystone Land & Development Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 (2004). When a party signs a contract, the law presumes she has objectively manifested assent to its contents. *Cruz v. Chavez*, 186 Wn. App. 913, 920-21 (2015). That rule does not apply when another contracting party

10

committed fraud, deceit, misrepresentation, coercion, or other wrongful acts. *Cruz v. Chavez*, 186 Wn. App. 913, 920-21 (2015).

Washington follows the objective manifestation theory of contracts. The court discerns the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent of the parties. *Condon v. Condon*, 177 Wn.2d 150, 162 (2013).

Washington also has adopted the "context rule." *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 502, 115 P.3d 262 (2005). Courts interpret the intent of the contracting parties in the context surrounding an instrument's execution. *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 502 (2005). If relevant for determining mutual intent, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties. *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 502 (2005).

Deborah Hawkins argues that a genuine dispute of material terms in the parties' settlement agreement existed. She, however, does not identify which term or terms she believes to be in dispute. We assume she references the division of the proceeds in the sale of the house.

11

Deborah Hawkins relies on *Cruz v. Chavez*, 186 Wn. App. 913 (2015). Manuel Cruz, Gilberto Ramirez, and Epifanio Rios filed a lawsuit against Abel Chavez, their former employer. The plaintiffs, Mexican immigrants who did not speak English, worked as landscaping employees for Chavez. They alleged Chavez withheld and underpaid wages. After arbitration, during which the arbitrator entered an award in favor of the plaintiffs, Chavez requested trial de novo.

Before trial, Abel Chavez executed a settlement agreement with Gilberto Ramirez, under which Ramirez agreed not to sue Chavez in exchange for payment of $4,000. Chavez's attorney drafted the agreement and encouraged Chavez to obtain Ramirez's signature without the knowledge of Ramirez's attorney. The agreement, written in Spanish, was signed by Chavez, Ramirez, and a witness. The parties' attorneys were not present when signing occurred. Chavez and his counsel did not inform Ramirez's attorney of the agreement.

Abel Chavez filed a motion to enforce the Gilberto Ramirez settlement agreement. Chavez submitted with his motion a signed copy of the agreement in Spanish and a signed copy in English. He also submitted the $4,000 settlement check issued on September 4, 2012 by Chavez Landscaping to Ramirez.

Gilberto Ramirez opposed enforcement of the settlement agreement. He argued that the agreement violated the Rules of Professional Conduct (RPC) and the Civil Rules (CR), and he requested sanctions against Abel Chavez and his attorney for violating the

RPC, CR 1, and discovery rules. The trial court denied Chavez's motion because of the manner in which Chavez obtained Ramirez's signature. The court also imposed sanctions against Chavez and his attorney, totaling $5,000, for discovery violations and failure to disclose the settlement agreement Chavez entered with Gilberto Ramirez. Chavez appealed the decision, arguing that the trial court erred by denying his motion to enforce the settlement agreement because CR 2A does not bar enforcement of the agreement without a genuine dispute over its material terms. This court, in *Cruz v. Chavez*, affirmed the denial of enforcement of the settlement agreement because of a question of fact as to whether Abel Chavez and his attorney acted wrongfully.

Deborah Hawkins analogizes the facts of *Cruz v. Chavez* because she was pro se and Andrew Hawkins pressured her to sign the agreement so the sale of the residence could close. Deborah contends that, like the promises in *Cruz v. Chavez*, Andrew promised her that the settlement agreement was fair and encompassed their earlier agreement. She emphasizes that she signed the agreement within twenty-four hours of receiving it. Then, Andrew and his counsel refused to communicate with her. Finally, Deborah emphasizes that Andrew never signed the agreement.

Andrew Hawkins disputes that any question of fact exists as to whether he pressured Deborah into signing the agreement. Andrew emphasizes that, although Deborah had twenty days to respond to the petition for divorce from the date of service, she filed, within three days, a pro se response and agreed to each item listed on the

13

petition, including the house being awarded to him. In response to the email, which attached the settlement agreement, Deborah could have declined to respond, could have negotiated, and could have consulted with an attorney. The email afforded her eight days to sign. She signed a day later. According to Andrew, Deborah's quick responses to the petition and the settlement agreement established the lack of any pressure exerted to sign the settlement agreement.

We agree with the dissolution court that no genuine issue of fact exists as to undue pressure on Deborah Hawkins or the enforceability of the settlement agreement. *Cruz v. Chavez* does not supply a fair analogy because Andrew's attorney never encouraged Andrew to procure Deborah's signature without Deborah seeking legal advice. Although Deborah declares that she was unclear about the terms of the settlement agreement, she signed anyway the next day despite being given eight days to respond. If Deborah did not understand the terms of the agreement, she could have hired counsel or asked Andrew for clarification before signing. Even though the documents, to which Deborah assented, remained silent with respect to the parties' agreement that she would receive half of the proceeds from the sale of the home, she provided the requisite assent when she signed each document with the knowledge of this missing provision. Although Deborah averred that Andrew applied pressure on her to sign, she conceded she was not forced to sign. Deborah possessed a better financial condition than Andrew and had no need for a quick settlement.

14

Deborah Hawkins argues that the trial court abused its discretion when viewing the evidence in the light most favorable to the nonmoving party and enforcing the settlement agreement without first holding an evidentiary hearing to resolve disputed facts. Deborah cites *Condon v. Condon*, 177 Wn.2d 150, 162 (2013) for the rule that a trial court must view the evidence in the light most favorable to the nonmoving party. Deborah insists that the record fails to show that the dissolution court employed the standard. Nevertheless, Deborah does not cite any portion of the record showing that the court utilized another standard. More importantly, the undisputed evidence supported the enforcement of the settlement agreement.

Although Deborah Hawkins argues that the trial court abused its discretion when it failed to hold an evidentiary hearing on a disputed issue of material fact, she does not identify which material fact she disputed. Also, she never asked the dissolution court for an evidentiary hearing. Thus, we decline to address the argument.

Ambiguity in Settlement Agreement

Deborah Hawkins contends that the settlement agreement contained ambiguities. Because she fails to identify those ambiguities and suggest how the trial court should have resolved them, we do not address this contention. We need not consider arguments undeveloped in the briefs and for which a party has not cited authority. *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 713, 395 P.3d 1059 (2017).

Deborah's Revocation

Deborah Hawkins contends she revoked the settlement agreement before Andrew signed it. Deborah highlights Angel Base's use of the word "signatures" in the email she sent her containing the settlement offer. She contends that the presence of signature lines for both parties on the agreement indicates that both parties' signatures were required to render the agreement enforceable. Deborah further argues that, because Andrew failed to sign the agreement before revocation, her revocation notice timely terminated the agreement under contract law. In support of his motion to enforce the settlement agreement, Andrew argues he need only show the signature of Deborah. Andrew argues that a settlement agreement with final orders signed by a party in opposition constituted a signed agreement for purposes of CR 2A.

Some of Deborah Hawkins' contentions are factually incorrect. Angel Base's April 5 email only references "signatures" when noting that Deborah needs to sign the findings of fact, conclusions of law, and divorce decree in addition to the settlement agreement. The email nowhere suggests that the agreement will bind Deborah only after Andrew signs the agreement. Also, Andrew and his counsel signed the agreement on April 6 anyway.

Even if Andrew Hawkins failed to sign the settlement agreement, he may still enforce the agreement against Deborah. No question of fact precludes enforcement. Under CR 2A and RCW 2.44.010, a settlement agreement is enforceable only if

16

"stipulated to on the record in open court or memorialized by a writing signed by the party to be bound." *Bryant v. Palmer Coking Coal Co.*, 67 Wn. App. 176, 179, 858 P.2d 1110 (1992). Because Andrew moved to enforce the settlement agreement against Deborah, Deborah was considered "the party to be bound" during the hearing on the motion.

## Public Policy

Deborah Hawkins argues that application of the *Cruz v. Chavez*, 186 Wn. App. 913 (2015) "rationale" should apply in order to promote public policy. She underscores she lacked representation when she signed the settlement agreement and that counsel represented Andrew and drafted the agreement. Deborah signed the settlement offer one day after receiving it and seven days after being served with the marital dissolution petition. Andrew assured her that she would receive half of the home equity. She diligently inquired about the home equity from Andrew and his counsel. When ignored, she sought counsel and timely revoked her agreement.

Deborah Hawkins does not identify the substance of the *Cruz v. Chavez* rationale. Therefore, we do not pursue this contention. Contrary to Hawkins' contention, public policy favors finality in property settlements. *Wagers v. Goodwin*, 92 Wn. App. 876, 882, 964 P.2d 1214 (1998); *In re Marriage of Jennings*, 91 Wn. App. 543, 548, 958 P.2d 358 (1998) *review granted*, 138 Wn.2d 612, 980 P.2d 1248 (1999).

17

Deborah Hawkins also argues that the settlement agreement fails a public policy analysis applied by Washington courts in the setting of prenuptial agreements. She cites *In re Marriage of Matson*, 107 Wn.2d 479, 730 P.2d 668 (1986) and analogizes her situation to a spouse being pressured into signing a prenuptial agreement on the eve of a wedding.

In *Marriage of Matson*, the husband requested, after the engagement, that his attorney draft a prenuptial agreement. During the week before the wedding, the parties met with the attorney twice to review the agreement. The parties met with the attorney again on the eve of their wedding day to sign the agreement. Unknown to the bride, the agreement prevented the creation of community property during marriage. The trial court upheld the agreement and this court reversed. The Supreme Court of Washington affirmed this court's decision and relied on a two-pronged analysis involving procedural and substantive fairness.

This case diverges from *Marriage of Matson*. First, unlike in *Matson*, the instant matter involves a settlement agreement, not a prenuptial agreement. Second, Deborah Hawkins voluntarily signed and returned the settlement agreement to Andrew Hawkins and his attorney within one day of receiving it and without inquiring about its terms. She enjoyed six days to seek any necessary clarification. Neither Andrew nor his attorney pressured Deborah into signing the agreement that quickly and without the assistance of counsel.

18

Attorney Fees

Deborah Hawkins assigns error to the dissolution court's award to Andrew of reasonable attorney fees and costs incurred to enforce the settlement agreement. She asserts that, although RCW 26.09.140 allows a court to award attorney fees in a family law matter based on need of the requesting party and the other party's ability to pay, the trial court did not consider that standard nor was that standard applicable.

Deborah Hawkins characterizes the superior court's award of fees as falling under CR 11, which imposes costs on a party for frivolous litigation conduct. She insists her resistance to the motion was not frivolous. According to Deborah, under CR 2A, she was entitled to assert good faith defenses in response to Andrew's motion and the law supports her defense. Deborah misinterprets the trial court's decision concerning the imposition of attorney fees because the record establishes that the superior court relied on RCW 4.84.185, not CR 11, when ordering Deborah to pay Andrew fees.

RCW 4.84.185 states:

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the

time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause.

CR 11(a) declares, in relevant part:

> The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief. . . .  If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

Other than citing caselaw for the definitions of a baseless claim and a frivolous motion, Deborah Hawkins fails to analyze the validity of her defense.  Therefore, we do not address this assignment of error.  We need not consider arguments undeveloped in the briefs and for which a party has not cited authority.  *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 713 (2017).

Andrew Hawkins also seeks an award of reasonable attorney fees and costs on appeal because of the frivolous nature of Deborah Hawkins' appeal and her intransigence which created more expenses. RCW 26.09.140 states:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.

RAP 18.1 provides, in relevant part:

> If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.

Determining whether a fee award is appropriate requires the court to consider the parties' relative ability to pay. *Leslie v. Verhey*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). The court should also examine the arguable merit of the issues raised on appeal. *See State ex rel. Stout v. Stout*, 89 Wn. App. 118, 127, 948 P.2d 851 (1997); *In re Marriage of Griffin*, 114 Wn.2d 772, 779-80, 791 P.2d 519 (1990).

Despite a dissolution court instruction, Deborah Hawkins refused to submit any financial information to the trial court or to opposing counsel. She has also declined to file financial information with this court. Andrew Hawkins is disabled and has a disparate income compared to that of Deborah. Andrew agreed to forego spousal maintenance and lost his inheritance by granting Deborah his entire inheritance.

We award Andrew Hawkins fees on appeal under RAP 18.1 and RCW 26.09.140. Because we grant Andrew fees under RAP 18.1 and RCW 26.09.140, we do not address whether he should receive an award of fees under RCW 4.48.185.

Andrew Hawkins also requests that this court order sanctions against Deborah Hawkins under CR 11 for her neglect in cooperation as required by the settlement agreement, which necessitated the motion for order enforcing the settlement, for her frivolous litigation in opposition, and her appeal in furtherance of her intransigence. We do not view her arguments in their entirety as frivolous or meritless.

## CONCLUSIONS

We affirm the superior court's enforcement of the parties' settlement agreement. We award Andrew reasonable attorney fees and costs incurred on appeal.

22

No. 39065-9-III,
*In re Marriage of Hawkins*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.


_____
Fearing, J.


WE CONCUR:


_____
Lawrence-Berrey, C.J.

_____
Pennell, J.